# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| TotalEnergies Gas & Power North America, Inc.; Aaron Hall; and Therese Tran, <br><br> Plaintiffs, <br><br> v. <br><br> Federal Energy Regulatory Commission; Chairman Richard Glick; Commissioner James Danly; Commissioner Allison Clements; Commissioner Mark C. Christie; Commissioner Willie L. Phillips; and Acting Chief Administrative Law Judge Andrew Satten, in their official capacities, <br><br> Defendants. | No. 4:22-cv-4318 <br><br> Hon. Lynn N. Hughes |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 4

LEGAL STANDARD ........................................................................................... 7

ARGUMENT ........................................................................................................ 7

    I.    Plaintiffs Are Likely To Prevail On The Merits .................................... 8

        A.    The FERC Administrative Proceeding Is Unconstitutional
            For Multiple Reasons Recognized By The Fifth Circuit In
            *Jarkesy* .................................................................................... 8

            1.    Article III and the Seventh Amendment forbid
                assigning adjudication of this matter to an
                administrative agency ...................................................... 9

            2.    Assignment of the case to a FERC ALJ violates
                Article II ........................................................................ 12

            3.    If the NGA authorizes FERC to bring enforcement
                actions in-house, it violates the nondelegation
                doctrine of Article I ...................................................... 17

        B.    None Of The Purported Obstacles To Review Posited By
            The Courts In *Total I* Poses Any Impediment To The
            Present Action ......................................................................... 21

            1.    The present action is ripe ................................................ 21

            2.    No other impediment precludes judicial review here ...... 22

    II.    The Remaining Factors Strongly Support A Preliminary
        Injunction ............................................................................................. 24

        A.    The Plaintiffs Will Suffer Irreparable Harm Absent Relief ...... 25

        B.    A Preliminary Injunction Will Not Cause Any Cognizable
            Harm To The Commission And Will Promote The Public
            Interest .................................................................................... 27

CONCLUSION .................................................................................................... 29

i

**TABLE OF CONTENTS *(continued)***

LOCAL RULE 7.1(D) CERTIFICATE OF CONFERENCE

LOCAL RULE 7.5(A) REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF SERVICE

APPENDIX *(attached hereto; see separate table of contents for detail)*:

Relevant Filings in Administrative Proceeding in *Total Gas & Power N. Am., Inc., et al.*, No. IN12-17-000 ............................................. App. 1

Constitutional, Statutory, and Regulatory Provisions ......................... App. 701

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*A.H. ex rel. Hester* v. *French*,
    985 F.3d 165 (2d Cir. 2021) ................................................................. 25

*American Beverage Ass'n* v. *City & County of San Francisco*,
    916 F.3d 749 (9th Cir. 2019) ................................................................ 27

*American Civil Liberties Union of Ky.* v. *McCreary County*,
    354 F.3d 438 (6th Cir. 2003),
    aff'd, 545 U.S. 844 (2005) ................................................................... 25

*Archdiocese of Wash.* v. *Washington Metro. Area Transit Auth.*,
    897 F.3d 314 (D.C. Cir. 2018),
    cert. denied, 140 S. Ct. 1198 (2020) ................................................... 25

*Armstrong* v. *Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ............................................................................ 23

*Awad* v. *Ziriax*,
    670 F.3d 1111 (10th Cir. 2012) .......................................................... 27

*Bond* v. *United States*,
    564 U.S. 211 (2011) ............................................................................ 25

*BST Holdings, LLC* v. *OSHA*,
    17 F.4th 604 (5th Cir. 2021) ............................................................... 25

*Byrum* v. *Landreth*,
    566 F.3d 442 (5th Cir. 2009) ................................................................. 7

*Calderon* v. *Ashmus*,
    523 U.S. 740 (1998) ..................................................................... 22, 23

*City of Dallas* v. *Delta Air Lines, Inc.*,
    847 F.3d 279 (5th Cir. 2017) ........................................................... 7, 27

*Cochran* v. *SEC*,
    20 F.4th 194 (5th Cir. 2021),
    cert. granted, 142 S. Ct. 2707 (2022) ................... 16, 21, 22, 23, 24, 26

*Dahl* v. *Board of Trs. of W. Mich. Univ.*,
    15 F.4th 728 (6th Cir. 2021) ............................................................... 27

*D.M. ex rel. Bao Xiong* v. *Minnesota State High School League*,
    917 F.3d 994 (8th Cir. 2019) .............................................................. 27

*Elrod* v. *Burns*,
    427 U.S. 347 (1976) ............................................................................ 25

**TABLE OF AUTHORITIES** *(continued)*

CASES *(continued)*                                                          Page(s)

*Free Enterprise Fund* v. *PCAOB*,
    561 U.S. 477 (2010) ............................................................... 13, 16, 17, 23

*Freytag* v. *Commissioner*,
    501 U.S. 868 (1991) .................................................................................... 17

*Jackson Women's Health Org.* v. *Currier*,
    760 F.3d 448 (5th Cir. 2014),
    cert. denied, 579 U.S. 941 (2016) ............................................................ 27

*Jarkesy* v. *SEC*:

    34 F.4th 446 (5th Cir. 2022) ................................ 1, 6, 7, 8, 9, 10, 11, 12,
                                         13, 14, 16, 17, 18, 19

    51 F.4th 644 (5th Cir. 2022) ................................................................. 1, 6

*Lucia* v. *SEC*,
    138 S. Ct. 2044 (2018) ......................................................................... 15, 16

*Mistretta* v. *United States*,
    488 U.S. 361 (1989) .................................................................................... 18

*Myers* v. *United States*,
    272 U.S. 52 (1926) ..................................................................................... 12

*National Federation of Indep. Bus.* v. *Department of Labor*,
    142 S. Ct. 661 (2022) ................................................................................. 25

*Nken* v. *Holder*,
    556 U.S. 418 (2009) .................................................................................... 27

*Oil States Energy Servs., LLC* v. *Greene's Energy Group, LLC*,
    138 S. Ct. 1365 (2018) ............................................................................... 98

*Sambrano* v. *United Airlines, Inc.*,
    No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ...................... 7

*SEC* v. *Cochran*,
    142 S. Ct. 2707 (2022) ............................................................................... 24

*Thunder Basin Coal Co.* v. *Reich*,
    510 U.S. 200 (1994) .................................................................................... 23

*Total Gas & Power N. Am., Inc.* v. *FERC*,
    No. 4:16-1250, 2016 WL 3855865 (S.D. Tex. July 15, 2016),
    aff'd, 859 F.3d 325 (5th Cir. 2017) ................................................... 22, 23

**TABLE OF AUTHORITIES** *(continued)*

CASES *(continued)*                                                                   Page(s)

*Total Gas & Power N. Am., Inc.* v. *FERC,*
  859 F.3d 325 (5th Cir. 2017),
  cert. denied, 138 S. Ct. 2648 (2018) ........................................................ 4, 5, 21, 22

*Tull* v. *United States,*
  481 U.S. 412 (1987) ............................................................................................. 9

CONSTITUTIONAL PROVISIONS

U.S. Const. Art. I, § 1 ............................................................................................. 18

U.S. Const. Art. II, § 2, Cl. 2 ........................................................................... 14, 16

U.S. Const. Art. II, § 3 ........................................................................................... 12

U.S. Const. Art. III, § 1 ........................................................................................... 9

U.S. Const. Amend. VII ........................................................................................... 9

STATUTES

5 U.S.C. § 904 ......................................................................................................... 17

5 U.S.C. § 1202 ....................................................................................................... 14

5 U.S.C. § 7521 ................................................................................................. 13, 14

15 U.S.C. § 717 ......................................................................................................... 4

15 U.S.C. § 717b ..................................................................................................... 17

15 U.S.C. § 717c ................................................................................................. 4, 17

15 U.S.C. § 717c-1 ................................................................................................... 4

15 U.S.C. § 717m ................................................................................................... 17

15 U.S.C. § 717r ................................................................................................. 4, 26

15 U.S.C. § 717t-1 ................................................................................................... 4

15 U.S.C. § 717u ..................................................................................................... 19

15 U.S.C. § 3301 ....................................................................................................... 4

16 U.S.C. § 791a ....................................................................................................... 4

16 U.S.C. § 823b ..................................................................................................... 11

16 U.S.C. § 824v ..................................................................................................... 11

42 U.S.C. § 7171 ........................................................................................... 4, 14, 17

## TABLE OF AUTHORITIES *(continued)*

**REGULATIONS**                                                    **Page(s)**

17 C.F.R. § 240.10b-5 ................................................................ 11

18 C.F.R. § 1c.1 ........................................................................ 11

18 C.F.R. § 376.105 .................................................................. 15

**OTHER AUTHORITIES**

Federal Energy Regulatory Commission:

  *Policy Statement on Enforcement*, 113 FERC ¶ 61,068 (2005) ........................ 18

  *Statement of Administrative Policy Regarding the Process for
    Assessing Civil Penalties*, 117 FERC ¶ 61,317 (2006) ................................ 18

## INTRODUCTION

The Fifth Circuit has made emphatically clear that the Constitution's structural safeguards matter, and federal agencies must honor them. In *Jarkesy* v. *SEC*, 34 F.4th 446 (5th Cir. 2022), the court of appeals held that an administrative enforcement action before the Securities and Exchange Commission (SEC) violated three separate structural constitutional guarantees: first, Article III and the Seventh Amendment entitled the challengers to a jury trial in federal court on the SEC's claims, not an in-house proceeding in which the agency adjudicates its own allegations; second, Article II forbade assigning that case to an SEC administrative law judge (ALJ), because the ALJ was insulated from the President's control by at least two layers of for-cause removal restrictions; and third, Article I barred Congress from delegating legislative power to the SEC to choose which cases to bring in court and which to decide in-house, without providing any "intelligible principle" to guide that decision. *Id.* at 449; see *id.* at 451-466. The court denied the SEC's request for rehearing en banc. *Jarkesy* v. *SEC*, 51 F.4th 644 (5th Cir. 2022). *Jarkesy* stands as the Fifth Circuit's final word: federal agencies must take structural safeguards seriously.

One agency, however, has not gotten the message. All three of *Jarkesy*'s constitutional holdings apply equally to enforcement actions brought by the Federal Energy Regulatory Commission (FERC or Commission). But FERC has refused to respect that decision and the structural safeguards that *Jarkesy* enforced. The Commission is about to hold a bench trial before a FERC ALJ—set to begin January 23, 2023—concerning FERC's allegations that Plaintiffs TotalEnergies Gas & Power

1

North America, Inc. (TGPNA), Aaron Hall, and Therese Tran (collectively, Plaintiffs) manipulated prices in the natural-gas market from 2009 to 2012. FERC seeks more than $200 million in civil penalties from Plaintiffs, plus disgorgement of purported profits and restitution. After *Jarkesy* was decided, Plaintiffs promptly brought that precedent—which would be binding in any appeal of a FERC final order here—to FERC's attention. As Plaintiffs showed, FERC's attempt to adjudicate its allegations against Plaintiffs through an in-house proceeding suffers each of the same structural constitutional defects that *Jarkesy* recognized in materially indistinguishable SEC enforcement actions: the proceeding deprives Plaintiffs of their rights under Article III and the Seventh Amendment to a jury trial in federal court; it violates Article II by assigning the matter to an ALJ who is improperly insulated from removal (and also was not validly appointed in the first place); and, to the extent Congress has delegated to FERC the power to choose in-house adjudication in this context (which, under a proper reading of the statute, it has not), that delegation violates Article I.

The Commission has not identified any reason why its proceeding against Plaintiffs may proceed despite *Jarkesy*. And its own prosecutorial arm has acknowledged that FERC ALJs are subject to the same statutory scheme as SEC ALJs that *Jarkesy* invalidated. Yet FERC has declined to confront that decision at all. It has stood silent, simply ignoring Plaintiffs' repeated requests that FERC dismiss its unlawful proceeding in light of *Jarkesy*—or at least stay the proceeding pending any potential further review that the government might pursue. Because of FERC's intransigent inaction, the ALJ hearing is now imminent: it will begin within six weeks.

Plaintiffs accordingly have no choice but to seek this Court's intervention. Fifth Circuit precedent governing Plaintiffs' claims is clear. And this Court's authority to adjudicate Plaintiffs' claims, and to grant injunctive relief while it considers the merits, is also settled under Fifth Circuit law. Unlike a prior case that Plaintiffs brought to prevent FERC from initiating its unlawful proceeding against them—which the Fifth Circuit found to be premature—there is nothing speculative about this suit. And an intervening Fifth Circuit en banc decision cements this Court's jurisdiction to decide Plaintiffs' claims. Allowing the hearing to proceed would irreparably harm Plaintiffs, whose constitutional injuries, once incurred, can never retroactively be made whole.

FERC also cannot plausibly claim that deferring the ALJ hearing pending this Court's adjudication of Plaintiffs' structural constitutional challenges—each controlled by *Jarkesy* or Supreme Court precedent—will cause the agency or the public any cognizable harm. FERC's enforcement action alleges violations occurring more than a decade ago. After commencing the proceeding in 2016, FERC took no action for five years, before reviving it in 2021 and setting it for hearing. Nor would any regulatory gap arise from granting the relief sought here, because FERC may still pursue its allegations in an appropriate federal district court. And the public interest is furthered, not hindered, when the Constitution is followed. This Court should preliminarily enjoin FERC's in-house proceeding pending resolution of this suit.*

---

\* Counsel for Plaintiffs conferred with counsel for Defendants, who stated that Defendants oppose the preliminary injunction sought in this motion.

## BACKGROUND

1.      FERC is a five-member "independent regulatory commission" that Congress "established within the Department [of Energy]," 42 U.S.C. § 7171(a), and that "primarily administers three statutes":  the Natural Gas Act (NGA), 15 U.S.C. § 717 *et seq.*; the Federal Power Act, 16 U.S.C. § 791a *et seq.*; and the Natural Gas Policy Act of 1978, 15 U.S.C. § 3301 *et seq.*  *Total Gas & Power N. Am., Inc.* v. *FERC*, 859 F.3d 325, 327 (5th Cir. 2017) (*Total I*), cert. denied, 138 S. Ct. 2648 (2018).  The NGA, at issue here, "grants FERC the authority to regulate the interstate transport and sale of natural gas"—*e.g.*, "setting pipeline rates."  *Ibid.*  FERC exercises that regulatory authority by issuing final "order[s]," such as rate-making orders, *e.g.*, 15 U.S.C. § 717c(e), which can be reviewed by a court of appeals, *id.* § 717r.

In 2005, Congress amended the NGA "to prohibit manipulation in natural gas markets." *Total I*, 859 F.3d at 327 (citing 15 U.S.C. § 717c-1).  That amendment "also made changes to how the NGA was enforced." *Ibid.*  Before 2005, the Commission could "'investigate'" suspected violations of the NGA and "conduct hearings"; if it believed that a violation had occurred, FERC could "see[k] injunctive relief and criminal penalties against violators in federal district court." *Id.* at 327-328 (citation omitted). The 2005 amendment authorized FERC to "asses[s]" "civil penalt[ies]" of up to $1 million per day.  *Id.* at 328 (quoting 15 U.S.C. § 717t-1).  The process by which an NGA violation may be found (and by whom) and penalties may be imposed is among the issues disputed in this case.  See Compl. ¶¶ 5, 51-93, 148-179.

2.    In 2012, FERC opened an investigation of Plaintiff TGPNA—a U.S. sub-sidiary (and North American gas-trading arm) of a French oil and gas company then known as TOTAL S.A.—and two of its trading managers, Hall and Tran (collectively, Plaintiffs).  *Total I*, 859 F.3d at 330.  FERC's Office of Enforcement (Enforcement Staff) alleged that, from 2009 to 2012, Plaintiffs engaged in a scheme to manipulate natural gas in the southwestern United States.  Appendix (App.) 10-14; Compl. ¶ 95.

After receiving notice of Enforcement Staff's allegations, Plaintiffs commenced a civil action in federal court, which was transferred to this District, seeking a declaratory judgment that FERC lacked statutory authority to adjudicate the alleged NGA violations through an administrative proceeding and that doing so would violate multiple constitutional provisions.  *Total I*, 859 F.3d at 330-331.  Another member of this Court (Hon. Nancy F. Atlas) dismissed that action on ripeness and certain other grounds.  *Id.* at 331-332.  The Fifth Circuit affirmed solely on the ground that Plaintiffs' suit was not ripe.  *Id.* at 332-339; see *id.* at 333 n.5 (reserving other issues).

The agency proceeding continued and, in April 2016, the Commission issued to Plaintiffs an Order to Show Cause alleging violations of the NGA and a FERC anti-manipulation regulation thereunder, and seeking civil penalties of more than $216 million (plus more than $9 million in purported disgorgement, and interest).  App. 1, 4.  In July 2016, Plaintiffs submitted an Answer, again arguing that administrative adjudication of FERC's allegations would violate multiple constitutional provisions, that FERC lacked jurisdiction over the proceeding, and that the allegations lacked merit in any event.  App. 167-350; Compl. ¶¶ 99-100.

*Five* years later, in July 2021, the Commission issued an Order Establishing Hearing, App. 424-550, in which it set the matter for hearing before a FERC ALJ, App. 546-547.  That hearing is now scheduled to begin January 23, 2023.  Compl. ¶ 101.  Following that hearing, the presiding ALJ must issue an initial decision on FERC's allegations, which the Commission itself will then review.  App. 545-547.

3.     In May 2022, the Fifth Circuit issued its decision in *Jarkesy*, 34 F.4th 446.  *Jarkesy* held that a materially indistinguishable administrative proceeding before the SEC was unconstitutional for three reasons:  "SEC's in-house adjudication of [the challengers'] case violated their Seventh Amendment right to a jury trial" and could not be assigned to an agency under Article III; "statutory removal restrictions on SEC ALJs violate the Take Care Clause of Article II"; and "Congress unconstitutionally delegated legislative power to the SEC" by allowing the SEC to choose whether to bring enforcement actions in court or through an in-house agency proceeding, without "provid[ing] an intelligible principle" to guide the SEC's discretion.  *Id.* at 449.

Plaintiffs promptly brought *Jarkesy* to FERC's attention and asked it to dismiss or stay the proceeding against Plaintiffs.  App. 551-570.  FERC's Enforcement Staff, however, urged FERC to disregard *Jarkesy* based on the prospect of further judicial review of the Fifth Circuit panel's decision.  App. 575-576.  FERC took no action.

The government sought rehearing en banc in *Jarkesy*.  On October 21, 2022, the Fifth Circuit denied rehearing.  51 F.4th 644.  On November 4, 2022, Plaintiffs brought that denial of rehearing to FERC's attention and informed FERC that, if it

took no action on their motion within 30 days, they would seek judicial intervention. App. 678-698.  FERC still has taken no action.

## LEGAL STANDARD

A movant is "entitled to a preliminary injunction" if it shows:  "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest." *City of Dallas* v. *Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017) (citation omitted); accord, *e.g.*, *Sambrano* v. *United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *3-*10 (5th Cir. Feb. 17, 2022) (per curiam) (reversing denial of injunction); *Byrum* v. *Landreth*, 566 F.3d 442, 445-449 (5th Cir. 2009) (same).

## ARGUMENT

The administrative proceeding that the Commission has commenced against Plaintiffs, in which a bench trial will begin in less than six weeks, violates the Constitution in multiple respects identified by the Fifth Circuit in *Jarkesy* v. *SEC*, 34 F.4th 446 (5th Cir. 2022).  The administrative proceeding should be preliminarily enjoined pending this Court's adjudication of the merits of Plaintiffs' claims.

As set forth in Plaintiffs' complaint, the administrative proceeding is also unlawful on multiple other constitutional and statutory grounds, and Plaintiffs' suit seeks relief on all of those grounds.  Compl. ¶¶ 51-258.  But Plaintiffs' preliminary-injunction motion seeks interim relief based only on the structural constitutional

claims set forth herein, based on *Jarkesy* and Supreme Court precedent.  To rule on this motion, the Court need consider only those structural constitutional claims.

## I.      PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

Plaintiffs are likely to prevail on all of their constitutional challenges to FERC's proceeding because the Fifth Circuit has already decided them in *Jarkesy*. The Commission was required, but failed, to follow that binding precedent.  It now falls to this Court to do so.  None of the purported threshold barriers to review that the Fifth Circuit or Judge Atlas posited in the prior suit applies here.

### A.      The FERC Administrative Proceeding Is Unconstitutional For Multiple Reasons Recognized By The Fifth Circuit In *Jarkesy*

The Fifth Circuit held in *Jarkesy* that an SEC administrative enforcement proceeding "suffered from three independent constitutional defects": first, that proceeding deprived the charged parties of their right to a jury trial in a federal court under Article III and the Seventh Amendment; second, adjudication of the matter by an ALJ violated Article II; and third, Congress had "unconstitutionally delegated legislative power to the SEC" by allowing it to choose whether to proceed in court or administratively.  34 F.4th at 451; see *id.* at 451-465.  The FERC proceeding here suffers each of those same three independent defects.  In fact, the Article II problem here runs even deeper because FERC ALJs also are not validly appointed—an issue the Supreme Court had already decided in the SEC context before *Jarkesy* reached the Fifth Circuit.  Any one of these constitutional defects is fatal to FERC's proceeding.  Together, they leave no doubt that the proceeding is unlawful and must end.

### 1. *Article III and the Seventh Amendment forbid assigning adjudication of this matter to an administrative agency*

FERC's allegations cannot be adjudicated by the agency at all because Article III and the Seventh Amendment entitle Plaintiffs to a jury trial in federal court. Article III vests "the judicial Power of the United States" in federal judges with life tenure and salary protection. U.S. Const. Art. III, § 1. The Seventh Amendment guarantees a jury trial "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars." Amend. VII. As *Jarkesy* held, those structural constitutional constraints forbid agency adjudication of actions like those here.

"The Supreme Court has interpreted 'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy*, 34 F.4th at 452 (citing *Tull* v. *United States*, 481 U.S. 412, 417 (1987)). That "include[s] suits brought under a statute as long as the suit seeks common-law-like legal remedies," which the Supreme Court "has specifically held" encompasses "suits brought under a statute seeking civil penalties." *Ibid.* (citing *Tull*, 481 U.S. at 418-424). And as *Jarkesy* explained, although Article III's protections and the Seventh Amendment jury-trial right do not apply where "Congress properly assigns a matter to adjudication in a non-Article III tribunal," Congress may do so only with respect to what the Supreme Court has called "public rights." *Id.* at 453 (quoting *Oil States Energy Servs., LLC* v. *Greene's Energy Group, LLC*, 138 S. Ct. 1365, 1379 (2018); other citation omitted). For claims that "arise 'at common law,'" agency adjudication thus is constitutional only if the claims fall within the "the Supreme Court's public-rights cases." *Ibid.*

9

*Jarkesy* makes clear that FERC's claims against Plaintiffs do "arise 'at common law'" and cannot "be properly assigned to agency adjudication under the public-rights doctrine." 34 F.4th at 453, 455; see *id.* at 453-457.  The Fifth Circuit held that an SEC securities-fraud action seeking civil penalties arose at common law, explaining that "[f]raud prosecutions were regularly brought in English courts at common law," and "actions seeking civil penalties are akin to special types of actions in debt from early in our nation's history which were distinctly legal claims." *Id.* at 453-454.  It made no difference that the SEC also sought other, equitable remedies:  "the penalty facet of the action suffice[d] for the jury-trial right to apply to an adjudication of the underlying facts supporting fraud liability." *Id.* at 454-455.

*Jarkesy* further held the SEC action could not be insulated from Article III and the Seventh Amendment "under the public-rights doctrine."  34 F.4th at 455.  The court reasoned that "[s]ecurities fraud actions are not new actions unknown to the common law," as "[c]ommon-law courts have heard fraud actions for centuries, even actions brought by the government for fines"; that "jury trials would not 'go far to dismantle the statutory scheme' or 'impede swift resolution' of the statutory claims," especially as "the SEC took seven years to dispose of [the challengers'] case" and did not assert that "a jury trial would have been less efficient"; and that the SEC claims were not "uniquely suited for agency adjudication," as "federal courts have dealt with actions under the securities statutes for many decades." *Id.* at 455-456.  The challengers in *Jarkesy* were therefore entitled to a jury trial in court. *Id.* at 457.

10

*Jarkesy*'s reasoning and conclusions apply equally to FERC's claims against Plaintiffs here. See Compl. ¶¶ 108-118. Like the SEC's civil-penalty claims alleging fraud in *Jarkesy*, FERC's civil-penalty claims alleging price manipulation "are akin to those same traditional actions in debt" that historically "'could only be enforced in courts of law.'" 34 F.4th at 454 (citation omitted). In fact, FERC's anti-manipulation rule on which its claims are premised, 18 C.F.R. § 1c.1, is nearly identical to, and was modeled on, its SEC counterpart, 17 C.F.R. § 240.10b-5. And as in *Jarkesy*, it is immaterial that a small sliver (approximately 4%) of the monetary recovery FERC seeks here (App. 1) might be viewed as an equitable remedy. 34 F.4th at 454-455.

In addition, like the SEC's claims in *Jarkesy*, FERC's claims here fall far outside the "public-rights" exception. 34 F.4th at 455. As in *Jarkesy*, the statutory provisions underlying the claims "created causes of action that reflect common-law fraud actions," and the regulations "use terms like 'fraud' and 'untrue statements of material fact' to describe the prohibited conduct," which recall "[t]he traditional elements of common-law fraud." *Ibid.* (brackets omitted). There is no more basis here than in *Jarkesy* to conclude that enforcing Article III and the Seventh Amendment would "dismantle the statutory scheme" or that FERC's claims are "uniquely suited" for administrative adjudication. *Ibid.* (citation omitted). Although FERC has been flouting those constitutional safeguards in NGA cases by bringing them in-house, it is undisputed that federal courts can adjudicate analogous actions under the Federal Power Act, see 16 U.S.C. §§ 823b(d)(1), (3), 824v. Nor can FERC plausibly contend that jury trials would "impede swift resolution" of its allegations. *Jarkesy*, 34 F.4th at 455

(citation omitted).  FERC opened its investigation in 2012, and the administrative proceeding has been ongoing for more than six years (and counting).

FERC reached a contrary conclusion when it set the case for hearing, asserting that the public-rights exception does apply here.  App. 526-529.  But that ruling pre-dated *Jarkesy* and rested on a misreading of the Supreme Court precedent that *Jarkesy* squarely rejected.  34 F.4th at 452-459.  For example, the Commission dismissed *Tull* as "inapposite," App. 529, a view echoed in the *Jarkesy* dissent, 34 F.4th at 473 (Davis, J., dissenting).  But the Fifth Circuit majority recognized *Tull*'s central relevance.  *Id.* at 452-455.  And although Plaintiffs promptly brought *Jarkesy* (and the Fifth Circuit's subsequent denial of rehearing) to FERC's attention, the agency has chosen to ignore it.  In all events, this Court must follow Fifth Circuit precedent.

## 2. *Assignment of the case to a FERC ALJ violates Article II*

Even if Article III and the Seventh Amendment allowed FERC's claims to be decided by the agency, FERC's assignment of the case to one of its ALJs would still violate Article II.  *Jarkesy* held that restrictions on removing SEC ALJs—which also apply to FERC ALJs—violate Article II's Take Care Clause, U.S. Const. Art. II, § 3. 34 F.4th at 463-465.  Moreover, FERC ALJs also are not validly appointed in the first place—an issue *Jarkesy* did not address in the SEC context only because the Supreme Court had already decided it and the challengers in *Jarkesy* had waived it.

a.    As *Jarkesy* explained, Article II's direction that the President "take Care that the Laws be faithfully executed," Art. II, § 3, requires that he "have adequate power over officers' appointment and removal."  34 F.4th at 463 (citing *Myers* v.

*United States*, 272 U.S. 52, 117 (1926)).  And although some limits on the President's removal power have been upheld, *Jarkesy* recognized that Supreme Court precedent precludes "two layers of for-cause protection" for SEC ALJs.  *Ibid.  Free Enterprise Fund* v. *PCAOB*, 561 U.S. 477 (2010), struck down dual for-cause removal restrictions for other SEC officials:  members of the Public Company Accounting and Oversight Board, who were removable only for cause by the SEC, whose members also were removable only for cause.  *Jarkesy*, 34 F.4th at 463 (discussing *Free Enterprise Fund*).

*Jarkesy* reached the same conclusion for SEC ALJs.  34 F.4th at 464-465.  As the Fifth Circuit explained, SEC ALJs are "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions."  *Id.* at 464.  Yet SEC ALJs could be "removed by the [SEC] 'only for good cause established and determined by the Merit Systems Protection Board (MSPB),'" and SEC Commissioners themselves could also be removed only for cause.  *Ibid.* (quoting 5 U.S.C. § 7521(a)).  The multiple layers of for-cause removal restrictions left ALJs "sufficiently insulated from removal that the President cannot" fulfill his duties under the Take Care Clause.  *Id.* at 465.  In fact, the government had previously conceded in the Supreme Court that dual layers of for-cause removal for SEC ALJs "would be unconstitutional" *unless* Section 7521(a)'s "good cause" removal restriction were construed very expansively, Gov't Br. at 53, *Lucia* v. *SEC*, 138 S. Ct. 2044 (2018) (No. 17-130), https://bit.ly/3VE0i0h, and it likewise urged the Fifth Circuit to rescue the statute by rewriting it to "allow removal for essentially any reason," 34 F.4th at 465.  *Jarkesy* rejected that argument, finding it likely foreclosed by the

13

statutory language and futile in any event because both the SEC's and the MSPB's members are also insulated by for-cause removal restrictions. *Ibid.* Thus, even on the government's reading of the restrictions on removing ALJs themselves, "two layers of for-cause protection stand in the President's way" of removing them. *Ibid.*

*Jarkesy*'s holding that the restrictions on removing SEC ALJs violate Article II applies directly to FERC ALJs. See Compl. ¶¶ 134-135. FERC could not plausibly dispute that its ALJs, like the SEC's, "serve sufficiently important executive functions" to be subject to the same constitutional constraints. *Jarkesy*, 34 F.4th at 463. The ALJ here will render the agency's initial decision on FERC's claims for civil penalties in excess of $200 million. And, as FERC's Enforcement Staff forthrightly conceded before the Commission, "FERC ALJs are subject to removal pursuant to the same statutory scheme as the SEC." App. 589. Specifically, FERC ALJs can be removed "only for good cause established and determined by the [MSPB]," 5 U.S.C. § 7521(a), and MSPB members may be removed "only for inefficiency, neglect of duty, or malfeasance in office," *id.* § 1202(d).

Moreover, FERC's organic statute and regulations make its Chairman "responsible on behalf of the Commission" for matters relating to ALJs' "appointment and employment." 42 U.S.C. § 7171(c). Removing an ALJ thus requires at least the Chairman's additional assent. And although the Chairman is "designated by the President," he must be "[o]ne of the members" of the Commission, all of whom (like MSPB members) can be removed from office "only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 7171(b)(1). As in *Jarkesy*, even on the government's

14

expansive reading of the grounds allowed by statute for removing ALJs, "if the President wanted [a FERC] ALJ to be removed, at least two layers of for-cause protection" still "stand in the President's way," in violation of Article II.  34 F.4th at 465.

b.   Far from saving FERC ALJs from violating Article II, the Chairman's role in their "appointment and employment" (42 U.S.C. § 7171(c)) makes matters worse.  The Appointments Clause, Art. II, § 2, Cl. 2, permits Congress to vest the appointment of "inferior Officers" in the President, in courts of law, or in "the Heads of Departments."  *Ibid.*  FERC has conceded that its ALJs are "inferior officers" subject to the Clause.  App. 520; see App. 520-523.  That concession is compelled by *Lucia* v. *SEC*, 138 S. Ct. 2044 (2018), in which the Supreme Court reached that conclusion for SEC ALJs, *id.* at 2051-2055.  But because FERC ALJs are appointed by the Chairman, 42 U.S.C. § 7171(c); 18 C.F.R. § 376.105—*not* by the President, courts, or the "Hea[d] of [the] Department" (*i.e.*, the Commission, if not the Secretary of Energy), U.S. Const. Art. II, § 2, Cl. 2—they cannot hold that office at all.  Compl. ¶¶ 122-128.

*Jarkesy* did not address a parallel defect in the method of appointing SEC ALJs—only because that defect had already been resolved by the Supreme Court in *Lucia* and remedied by the SEC, and the challengers in *Jarkesy* waived the issue.  Before *Lucia*, SEC ALJs likewise were not appointed by the President, courts of law, or the "Head of [the] Department," *i.e.*, "the Commission itself," but were instead selected by "[o]ther staff members" of the SEC.  138 S. Ct. at 2049-2050 (brackets omitted).  The Supreme Court held that SEC ALJs were inferior officers under the Appointments Clause who had been selected "without the kind of appointment the

Clause requires." *Id.* at 2055.  The Court remanded for the SEC's claims to be decided by a different, validly appointed ALJ (or the SEC itself).  *Ibid.*  The SEC thereafter "cured the constitutional defect identified in *Lucia* by ratifying the appointment of all of its ALJs."  *Cochran* v. *SEC*, 20 F.4th 194, 198 n.3 (5th Cir. 2021) (en banc), cert. granted, 142 S. Ct. 2707 (argued Nov. 7, 2022) (No. 21-1239).

Although the hearing in *Jarkesy* predated *Lucia* and the SEC's ratification, the challengers "waive[d] their right to a new hearing," in order to press their other contentions to the SEC.  34 F.4th at 450.  Here, Plaintiffs have never waived their right to have any hearing conducted by a validly appointed federal officer.  *Lucia* therefore controls, and the hearing before an improperly appointed ALJ must not commence.

FERC brushed aside this further structural constitutional defect when it set Plaintiffs' case for an ALJ hearing.  App. 520-523.  Despite conceding that FERC "ALJs are Officers of the United States, subject to the Appointments Clause," the Commission asserted that its ALJs are lawfully selected by its "Chairman."  App. 522.  But for an agency like FERC, which is overseen by a multi-member body vested with the agency's statutory authority, the "Hea[d] of [the] Departmen[t]," U.S. Const. Art. II, § 2, Cl. 2, is that multi-member body itself—not the individual member of it who presides.

That conclusion accords with common sense.  It also follows from the Supreme Court's decision in *Free Enterprise Fund*.  The plaintiffs there argued that Congress could not vest the appointment of inferior SEC officers in the full SEC "because only the Chairman of the [SEC] is th[at] Commission's 'Head.'"  561 U.S. at 511-512 (brackets omitted).  The Court rejected that argument, explaining that the SEC's "powers

16

* * * are generally vested in the Commissioners jointly, not the Chairman alone"; "[t]he Commissioners do not report to the Chairman"; and "[t]he Chairman is also appointed from among the Commissioners by the President alone, which means that he cannot be regarded as 'the head of an agency' for purposes of the Reorganization Act," whereas "[t]he Commission as a whole" did qualify as "the head of an agency" under that Act.  *Id.* at 512 (citing 5 U.S.C. § 904; other citations omitted).  The same is true of FERC.  15 U.S.C. §§ 717b(a), 717c(a), 717m(a); 42 U.S.C. § 7171(b)(1), (c).

FERC's only answer to *Free Enterprise Fund* was that, in an earlier case, the Supreme Court had previously approved the appointment of special trial judges of the U.S. Tax Court by that court's "chief judge."  App. 523 (citing *Freytag* v. *Commissioner*, 501 U.S. 868 (1991)).  But the *Freytag* Court *rejected* the government's contention the Tax Court was "a department with the Chief Judge as its head": the Court instead upheld the appointment as one properly vested in "'the Courts of Law,'" which did not require analyzing who was the court's "Head."   501 U.S. at 883-884, 888 (citations omitted); see *id.* at 882-892.  *Freytag* affords FERC's position no support.

### 3.  *If the NGA authorizes FERC to bring enforcement actions in-house, it violates the nondelegation doctrine of Article I*

*Jarkesy* held that the SEC enforcement proceeding was unconstitutional for still another reason:  Congress "unconstitutionally delegated legislative power to the SEC" by allowing the agency to "choose whether to bring enforcement actions in Article III courts or within the agency," without specifying any "intelligible principle to guide [the SEC's] use of th[at] delegated power."  34 F.4th at 459; see *id.* at 459-463.

That additional, Article I defect applies equally here—*unless* FERC lacks statutory authority to adjudicate alleged NGA violations administratively at all.

As *Jarkesy* explained, Article I vests "'*all* legislative Powers herein granted'" in Congress, and Congress therefore "cannot delegate  *  *  *  powers which are strictly and exclusively legislative." 34 F.4th at 460 (quoting U.S. Const. Art. I, § 1; brackets and other internal quotation marks omitted). The Supreme Court has held that "Congress may grant regulatory power to another entity," but "only if it provides an 'intelligible principle' by which the recipient of the power can exercise it." *Id.* at 461 (quoting *Mistretta* v. *United States*, 488 U.S. 361, 372 (1989)). *Jarkesy* held that Congress had improperly conferred "legislative power" on the SEC by authorizing it "to bring securities fraud actions for monetary penalties within the agency instead of in an Article III court whenever the SEC in its unfettered discretion decides to do so." *Ibid.* The Fifth Circuit explained that "the power to assign disputes to agency adjudication is 'peculiarly within the authority of the legislative department'" and "'completely within congressional control,'" but that Congress had outsourced that authority to the agency itself. *Ibid.* (citations omitted). *Jarkesy* further concluded that "Congress did not provide the SEC with an intelligible principle by which to exercise that power." *Id.* at 462. The SEC's authority was "open-ended," the court of appeals explained, and the statute "said nothing at all indicating how the SEC should make that call in any given case." *Ibid.*

To the extent FERC has any statutory authority to adjudicate alleged NGA violations in-house—a proposition Plaintiffs vigorously dispute—that authority

violates the nondelegation doctrine for the same reason.  As Plaintiffs explained at length in their complaint, the NGA is properly construed to require that alleged violations of that statute be adjudicated by a federal district court—not by FERC. Compl. ¶¶ 51-93, 148-179.  Section 24 of the NGA provides:

> The District Courts of the United States  * * *  shall have *exclusive jurisdiction* of violations of this chapter [i.e., the NGA] or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

15 U.S.C. § 717u (emphasis added).  Congress's explicit conferral of "exclusive jurisdiction" on federal district courts necessarily precludes agency adjudication.  *Ibid.*

FERC nevertheless maintains that Congress has "delegate[d] to the Commission the power to adjudicate NGA violations" administratively, and FERC refuses to construe Section 24 as "depriv[ing] the Commission" of its purported "power to adjudicate violations and assess penalties."  App. 507-508; see App. 498-521.  FERC is wrong about the statute.  Compl. ¶¶ 51-93, 148-179.  But even assuming arguendo that FERC *did* have "power" to decide NGA cases in-house, Congress's "delegat[ion]" of that power (App. 508) violates Article I, just as *Jarkesy* held with respect to the SEC.

Like the SEC statute in *Jarkesy*, the NGA "offer[s] *no guidance* whatsoever" to steer FERC's decision on which cases to pursue administratively rather than in court. 34 F.4th at 462.  FERC has previously acknowledged as much.  In 2005, FERC stated that, "[w]hile procedures for issuing civil penalties are in place under the FPA, [Energy Policy Act of 2005] is *silent* with respect to procedures under the NGA."  *Policy Statement on Enforcement*, 113 FERC ¶ 61,068, at P 16 (2005) (footnote omitted;

emphasis added).  And in 2006, the Commission observed that the Energy Policy Act of 2005's "grant of civil penalty authority under the NGA did not specify the process by which a penalty is to be assessed." *Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties*, 117 FERC ¶ 61,317 at P 6 (2006).  According to the Commission, "[t]he only statutory guidance given is that the 'penalty shall be assessed by the Commission after notice and opportunity for public hearing.'" *Ibid.* (citation omitted).  In the agency's own telling, FERC is flying blind.  The Commission has made a choice to bring all NGA actions in-house.  See *id.* at P 5.1.b.  But as *Jarkesy* makes clear, that is not a choice that Congress can empower FERC to make.

Of course, the nondelegation defect that *Jarkesy* identified would disappear in this case if Section 24 were construed, as its text commands, to require that FERC seek adjudication of alleged NGA violations in federal district court.  In fact, that plain-language reading of Section 24 would eliminate *all* of the constitutional infirmities discussed above:  if FERC by statute must bring enforcement actions in federal court, then the defects under Articles II and III and the Seventh Amendment that *Jarkesy* identified with in-house ALJ adjudications would be resolved.  Plaintiffs have also sought declaratory relief in this case on that basis, and Plaintiffs would welcome a judgment from this Court declaring that FERC lacks statutory authority to serve as prosecutor, judge, and jury in NGA enforcement actions following its own investigations.  But so long as FERC insists that it may adjudicate its civil-penalty claims against Plaintiffs in-house, that proceeding is unconstitutional under *Jarkesy*.

**B.      None Of The Purported Obstacles To Review Posited By The Courts In *Total I* Poses Any Impediment To The Present Action**

As discussed above, Plaintiffs promptly sought judicial intervention to protect their legal rights when the Commission first commenced the unlawful agency proceeding.  The Fifth Circuit upheld the dismissal of that suit solely on the ground that the dispute was not yet ripe.  *Total I*, 859 F.3d at 332-339.  Neither that conclusion nor any other reason Judge Atlas identified for dismissing the prior suit applies here.

**1.      *The present action is ripe***

The Fifth Circuit in *Total I* held that Plaintiffs' prior suit challenging this proceeding was not "ripe" for judicial resolution.  859 F.3d at 337; see *id.* at 332-339.  That holding has been overtaken by intervening events.  The Fifth Circuit in *Total I* explained that FERC had not yet decided whether to set the proceeding for an ALJ hearing culminating in an initial decision.  *Id.* at 336, 339.  And in *Cochran*, the full Fifth Circuit subsequently clarified the precise basis for the *Total I* panel's ruling:

> [T]he [*Total I*] plaintiffs sought a declaration that FERC was precluded from conducting administrative enforcement proceedings against them.  However, in that case, FERC had not actually scheduled a hearing before an ALJ prior to the plaintiffs filing suit.  Consequently, we held that the plaintiffs' fear of being subjected to a constitutionally defective proceeding was too speculative to establish hardship for ripeness purposes.

20 F.4th at 213 (citations omitted).  The en banc court distinguished *Cochran* from *Total I* on precisely that basis, holding that the *Cochran* plaintiff's suit challenging the SEC proceeding there could go forward because that proceeding *had* been set for a hearing.  *Ibid.*  "As the SEC has already assigned Cochran's case to an ALJ," the court held, "her risk of hardship is substantially more concrete than in [*Total I*]," and

21

"[t]herefore" the en banc court "h[e]ld that Cochran's removal power challenge is ripe." *Ibid.*

The same is true here.  After mulling the matter for five years, in July 2021 the Commission set the proceeding for an ALJ hearing.  App. 424-550.  That order put to rest any uncertainty as to how the Commission would proceed.  The hearing is now imminent:  it is scheduled to begin January 23, 2023—less than six weeks from now.  And despite being made aware months ago of *Jarkesy* and the denial of rehearing, FERC has refused to reconsider its approach and either dismiss or even pause the proceeding.  There is thus no longer any question that, absent judicial intervention, Plaintiffs will be forced to undergo an administrative trial before an agency and an official that cannot constitutionally adjudicate the Commission's allegations.

### 2.    *No other impediment precludes judicial review here*

Judge Atlas posited other reasons for dismissing *Total I* on which the Fifth Circuit reserved judgment.  859 F.3d at 333 n.5.  To the extent the government might try to resurrect those other grounds here, none poses any impediment to relief here.

a.    Judge Atlas held that Plaintiffs' request for declaratory relief in the prior district-court case was "not justiciable" because, in her view, a declaration that FERC cannot adjudicate its claims against Plaintiffs in-house would not "resolve the entire controversy between the parties"—namely, "whether civil penalties should be assessed against Plaintiffs for alleged violations" of the NGA.  *Total Gas & Power N. Am., Inc.* v. *FERC*, No. 4:16-1250, 2016 WL 3855865, at *8-*9 (S.D. Tex. July 15, 2016) (citing *Calderon* v. *Ashmus*, 523 U.S. 740 (1998)).  Judge Atlas also stated that,

as a matter of her discretion, she would not grant declaratory relief. *Id.* at *22-*25. Plaintiffs respectfully disagree with that ruling, but it is inapposite here in any event.

Most importantly, both Plaintiffs' present complaint and this motion for a preliminary injunction expressly seek *injunctive* relief based on Plaintiffs' constitutional challenges set forth above. Compl. ¶¶ 119-120, 129, 136, 146, 217-240. The Supreme Court has made clear that injunctive relief is available to challenge action by federal officials that is alleged to violate the Constitution. *Free Enterprise Fund*, 561 U.S. at 491 n.2; see also *Armstrong* v. *Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-327 (2015). That is the relief that the plaintiff sought (and obtained) in *Cochran*. 20 F.4th at 198. Judge Atlas's concerns that derived from *Calderon* regarding whether declaratory relief would resolve the entire controversy, and would otherwise be appropriate, have no application to a preliminary or permanent injunction.

In addition, out of an abundance of caution, Plaintiffs' complaint also seeks—to the extent the Court finds such a remedy necessary to provide complete relief—a declaration that would resolve the entire controversy, including the statutory merits. Compl. ¶ 254. But the Court need not consider that request to grant this motion, which seeks a preliminary injunction based on Plaintiffs' constitutional claims.

b.      Judge Atlas also concluded that Plaintiffs' prior suit challenging FERC's authority to adjudicate its claims in-house was barred under *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200 (1994), and the NGA's scheme of judicial review in the court of appeals of final FERC orders. Plaintiffs respectfully disagree with that ruling as well, but it has been overtaken by intervening precedent.

23

The en banc Fifth Circuit in *Cochran* rejected the contention that the SEC's judicial-review scheme "implicitly stripped" district-court jurisdiction over structural constitutional challenges of the kind Plaintiffs present here.  20 F.4th at 199; see *id.* at 199-212.  As *Cochran* explained, *Free Enterprise Fund* makes clear that such challenges to agency proceedings can proceed in district court irrespective of a statutory review scheme.  *Id.* at 199-204.  *Cochran* held that the same result follows under *Thunder Basin* because such structural challenges are collateral to the merits, lie outside the agency's expertise, and otherwise may escape meaningful judicial review. See *id.* at 204-212; see also *id.* at 197 n.2 (noting that Judge Willett concurred in the judgment because the case was "controlled by *Free Enterprise Fund*").

So too here.  Just as *Free Enterprise Fund* "put to rest" "[a]ny doubts" regarding district-court jurisdiction over Ms. Cochran's suit, 20 F.4th at 201, *Cochran* itself now makes clear that this Court can adjudicate Plaintiffs' structural constitutional challenges to FERC's proceeding, and the NGA's review scheme and *Thunder Basin* pose no impediment.  To be sure, the Supreme Court granted certiorari in *Cochran* and is now reviewing the Fifth Circuit's holding.  *SEC* v. *Cochran*, 142 S. Ct. 2707 (2022).  But the en banc court's decision in *Cochran* remains binding Fifth Circuit precedent today.

## II.   THE REMAINING FACTORS STRONGLY SUPPORT A PRELIMINARY INJUNCTION

The other preliminary-injunction factors—irreparable harm to Plaintiffs, and the balance of equities among the parties and the public—all weigh decisively in favor of relief.  The multiple constitutional violations identified by the Fifth Circuit in *Jarkesy* and present here require resolving those other factors in Plaintiffs' favor.

### A.    The Plaintiffs Will Suffer Irreparable Harm Absent Relief

Absent an injunction, Plaintiffs will suffer imminent, irreparable injury by being forced to stand trial before an unconstitutional tribunal poised to adjudicate alleged violations of the NGA that neither the Commission nor its ALJ can validly entertain.  The Fifth Circuit has held that "the loss of constitutional freedoms 'for even minimal periods of time  . . .  unquestionably constitutes irreparable injury.'"  *BST Holdings, LLC* v. *OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (granting stay) (quoting *Elrod* v. *Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); see *National Federation of Indep. Bus.* v. *Department of Labor*, 142 S. Ct. 661, 664-666 (2022) (per curiam) (reinstating stay).  Other courts agree.  See, *e.g.*, *A.H. ex rel. Hester* v. *French*, 985 F.3d 165, 184 (2d Cir. 2021); *Archdiocese of Wash.* v. *Washington Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018), cert. denied, 140 S. Ct. 1198 (2020); *American Civil Liberties Union of Ky.* v. *McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003), aff'd, 545 U.S. 844 (2005).

As explained above, requiring Plaintiffs to have their rights and obligations determined by a constitutionally invalid adjudicator would violate their constitutional rights several times over, as *Jarkesy* makes clear.  See Part I.A, *supra*.  Those rights are no less personal to Plaintiffs because they rest on structural constitutional safeguards.  "[I]ndividuals, too, are protected by the operations of separation of powers and checks and balances."  *Bond* v. *United States*, 564 U.S. 211, 223 (2011).  "If the constitutional structure of our Government that protects individual liberty is compromised, individuals who suffer otherwise justiciable injury may object."  *Ibid.*

Nor could Plaintiffs' constitutional injuries meaningfully be remedied in the future. Their harms consist of being haled before a tribunal that cannot constitutionally assert adjudicative authority over them, and of having FERC's allegations decided by federal officers whom the Framers forbade from wielding such power. Once incurred, those injuries cannot be undone. They can only be prevented in advance.

To be sure, if and when FERC issues an adverse final decision months or years from now, such a ruling could be reviewed by the Fifth Circuit. 15 U.S.C. § 717r. But that prospect does nothing to diminish Plaintiffs' present constitutional harms. Like the challengers in *Cochran* and *Free Enterprise Fund*, Plaintiffs are "challenging the constitutional authority of [their] adjudicator." *Cochran*, 20 F.4th at 209 (discussing *Free Enterprise Fund*, *supra*). They are "harmed by the structure of the [Commission's] statutory-review scheme itself" (as the Commission has erroneously construed it) and "challeng[e] the entire legitimacy of [the] proceedings." *Id.* at 208-210. Vindication of their constitutional claims by the Fifth Circuit or Supreme Court *after* Plaintiffs have been unlawfully subjected to that regime could not undo the here-and-now infringement of their constitutional freedoms today.

Moreover, as the Fifth Circuit stressed in *Cochran*, such potential future review might never occur, because a "final adverse order" is "a prerequisite for judicial review." *Cochran*, 20 F.4th at 209. If Plaintiffs prevail before the Commission (as they should), they will then be unable to seek judicial redress for the violation of their constitutional rights today. It would be perverse to allow a lack of merit in FERC's claims to insulate its violation of Plaintiffs' rights from judicial scrutiny.

## B.    A Preliminary Injunction Will Not Cause Any Cognizable Harm To The Commission And Will Promote The Public Interest

The final two factors—whether Plaintiffs' injury "outweighs" any "threatened harm" to the Defendants, and whether an injunction would "disserve the public interest," *Delta Air Lines*, 847 F.3d at 285 (citation omitted)—strongly support relief. Where, as here, "the Government is the opposing party," "the harm to the opposing party and weighing the public interest" "merge" into one inquiry.  *Nken* v. *Holder*, 556 U.S. 418, 435 (2009).  The government and public interests compel relief here because "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Jackson Women's Health Org.* v. *Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (quoting *Awad* v. *Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)), cert. denied, 579 U.S. 941 (2016); accord, *e.g.*, *Dahl* v. *Board of Trs. of W. Mich. Univ.*, 15 F.4th 728, 736 (6th Cir. 2021) (per curiam); *D.M. ex rel. Bao Xiong* v. *Minnesota State High School League*, 917 F.3d 994, 1004 (8th Cir. 2019); *American Beverage Ass'n* v. *City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc).

FERC cannot credibly claim that a preliminary injunction pausing the administrative proceeding while this litigation is resolved would cause the Commission any cognizable harm.  The Commission commenced its investigation of Plaintiffs a decade ago, in 2012.  Enforcement Staff first leveled formal allegations against Plaintiffs four years later, in 2016.  And the agency waited five more years, until July 2021, to set the matter for an ALJ hearing.  Deferring the in-house hearing while this Court considers Plaintiffs' constitutional claims entails a comparatively modest delay.   Nor

would any regulatory gap be created by granting the relief sought here.  The Commission may still pursue its allegations in an appropriate federal district court.

The Commission, moreover, should not be heard to complain about any incremental inconvenience of being called to account for its actions, because it chose to press forward in full view of Fifth Circuit precedent.  Plaintiffs promptly brought *Jarkesy* to FERC's attention, App. 551-570, but the Commission did nothing.  Perhaps FERC silently embraced its Enforcement Staff's suggestion to ignore that binding precedent based on the prospect that the Fifth Circuit might rehear *Jarkesy* en banc. App. 574-576, 589-590.  Yet even after Plaintiffs apprised FERC of the Fifth Circuit's denial of rehearing en banc in *Jarkesy*, App. 678-698, the agency continued to stand silent.

FERC now ostensibly clings to the remote possibility that the Supreme Court might someday review and reverse all of *Jarkesy*'s holdings.  But that attenuated hope of a hypothetical future ruling—which likely could not occur until 2024, see App. 679—is no excuse for pressing forward with a proceeding that flouts controlling Fifth Circuit precedent as it stands today.  At a minimum, FERC should have stayed the proceeding while any further review in *Jarkesy* unfolds.  Having chosen instead to court a constitutional conflict, FERC must accept the consequences of its choice.

## CONCLUSION

For the foregoing reasons, the Court should grant a preliminary injunction prohibiting the Defendants from further conducting the administrative proceeding against Plaintiffs, captioned *Total Gas & Power North America, Inc., et al.*, No. IN12-17-000 (FERC), including the hearing scheduled to begin on January 23, 2023.

Dated:  December 16, 2022

Respectfully submitted,

 /s/  *William S. Scherman*

Collin J. Cox
  (Texas Bar No. 24031977)
  ccox@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX  77002
Telephone:  (346) 718-6600
Facsimile:   (346) 718-6620

William S. Scherman*
  (D.C. Bar No. 384860)
  *attorney-in-charge*
  wscherman@gibsondunn.com
Jonathan C. Bond*
  (D.C. Bar No. 1003728)
  jbond@gibsondunn.com
Jeffrey M. Jakubiak
  (D.C. Bar No. 461178)
  jjakubiak@gibsondunn.com
Jason J. Fleischer*
  (D.C. Bar No. 978810)
  jfleischer@gibsondunn.com
Vladimir J. Semendyai*
  (D.C. Bar No. 1044217)
  vsemendyai@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  (202) 955-8500
Facsimile:   (202) 467-0539

*\* Pro Hac Vice* Applications Pending

*Attorneys for Plaintiffs*

**LOCAL RULE 7.1(D) CERTIFICATE OF CONFERENCE**

Pursuant to this Court's Local Rule 7.1(d), I hereby certify that on this 16th day of December 2022, counsel for Plaintiffs conferred with counsel for the Defendants, who represented that Defendants oppose the relief sought in this motion.

         */s/  William S. Scherman*
         William S. Scherman

## LOCAL RULE 7.5(A) REQUEST FOR ORAL ARGUMENT

Pursuant to this Court's Local Rule 7.5(A), Plaintiffs respectfully request oral argument and believe that oral presentation would be helpful to the Court in its consideration of the multiple weighty constitutional issues presented in this motion.

 /s/  *William S. Scherman*      
William S. Scherman

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December 2022, I caused the foregoing document and attachments thereto to be filed electronically through the Court's CM/ECF system.  Pursuant to Federal Rule of Civil Procedure 65(a), I have also caused paper copies of the foregoing to be delivered via FedEx overnight delivery to the addresses copied below and electronic copies of the foregoing to be emailed to the recipients identified below.

Sent via FedEx:

Federal Energy Regulatory Commission
888 First Street NE
Washington, DC 20426

Chairman Richard Glick
Federal Energy Regulatory Commission
888 First Street NE
Washington, DC 20426

Commissioner James Danly
Federal Energy Regulatory Commission
888 First Street NE
Washington, DC 20426

Commissioner Allison Clements
Federal Energy Regulatory Commission
888 First Street NE
Washington, DC 20426

Commissioner Willie L. Phillips
Federal Energy Regulatory Commission
888 First Street NE
Washington, DC 20426

Commissioner Mark C. Christie
Federal Energy Regulatory Commission
888 First Street NE
Washington, DC 20426

Merrick Garland
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Christopher A. Eiswerth
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, DC 20530

United States Attorney's Office
Southern District of Texas
1000 Louisiana, Ste. 2300
Houston, TX 77002

Acting Chief Administrative Law Judge
Andrew Satten
Federal Energy Regulatory Commission
888 First Street NE
Washington, DC 20426

Sent via E-Mail:

Christopher A. Eiswerth                Christopher Hall
Trial Attorney                        Assistant Branch Director
U.S. Department of Justice            U.S. Department of Justice
Civil Division                        Civil Division
Federal Programs Branch               Federal Programs Branch
Christopher.A.Eiswerth@usdoj.gov      Christopher.Hall@usdoj.gov


 /s/  *William S. Scherman*
William S. Scherman