# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| **TOTALENERGIES GAS & POWER NORTH AMERICA, INC., et al.,**<br><br>*Plaintiffs,*<br>**v.**<br><br>**FEDERAL ENERGY REGULATORY COMMISSION, et al.,**<br>*Defendants.* | Case No. 4:22-cv-4318<br><br>Hon. Lynn N. Hughes |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

1.    FERC's Statutory Authority ................................................................................ 3

2.    FERC's Administrative Enforcement Procedures ........................................... 4

3.    Factual Background ............................................................................................... 5

LEGAL STANDARD .................................................................................................... 8

ARGUMENT .................................................................................................................. 9

1.    The Motion Should Be Denied Under Circuit Precedent .............................. 9

    A.    Plaintiffs' Claims Are Not Ripe For Adjudication ............................ 10

    B.    Plaintiffs Have Not Shown Irreparable Harm Absent The Extraordinary Relief They Seek ........................................................................ 15

2.    The Court Lacks Subject-Matter Jurisdiction .............................................. 19

    A.    District Courts Do Not Have Jurisdiction To Consider Plaintiffs' Statutory And Constitutional Claims ................................................ 20

    B.    *Cochran* Does Not Resolve The Court's Jurisdiction ...................... 25

    C.    In The Alternative, The Court May Stay Proceedings ..................... 26

CONCLUSION ............................................................................................................ 28

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ................................................................................................ 10

*Adorers of the Blood of Christ v. FERC*,
   897 F.3d 187 (3d Cir. 2018) ................................................................................ 2, 21

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................................ 13

*Am. Energy Corp. v. Rockies Exp. Pipeline LLC*,
   622 F.3d 602 (6th Cir. 2010) .............................................................................. 2, 21

*Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*,
   430 U.S. 442 (1977) .................................................................................................. 9

*Axon Enterprise, Inc. v. FTC*,
   142 S. Ct. 895 (2022) .............................................................................................. 20

*Bank of La. v. FDIC*,
   919 F.3d 916 (5th Cir. 2019) ...................................................................... 21, 22, 24

*Bankamerica Corp. v. United States*,
   462 U.S. 122 (1983) ................................................................................................ 22

*Bilberry v. JPMorgan Chase Bank, N.A.*,
   2021 WL 536440 (W.D. Tex. Jan. 13, 2021) ......................................................... 28

*Burgess v. FDIC*,
   --- F. Supp. 3d ---, 2022 WL 17173893 (N.D. Tex. Nov. 6, 2022) ....................... 14

*CAE Integrated, LLC v. Moov Techs., Inc.*,
   44 F.4th 257 (5th Cir. 2022) .................................................................................... 9

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
   51 F.4th 616 (5th Cir. 2022) .................................................................................. 14

*Coastal Oil & Gas Corp. v. FERC*,
   782 F.2d 1249 (5th Cir. 1986) .................................................................................. 3

*Cochran v. SEC*,
   20 F.4th 194 (5th Cir. 2021) ............................................................................ *passim*

*Coker v. Select Energy Servs., LLC*,
    161 F. Supp. 3d 492 (S.D. Tex. 2015) .......................................................... 26, 28

*Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*,
    915 F.2d 167 (5th Cir. 1990) ........................................................................ 13

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) .................................................................................. 14

*Columbia Nitrogen Corp. v. Fed. Power Comm'n*,
    559 F.2d 377 (5th Cir. 1977) ........................................................................ 11

*Consolidated Gas Supply Corp. v. FERC*,
    611 F.2d 951 (4th Cir. 1979) ......................................................................... 2

*Delaware Riverkeeper Network v. FERC*,
    45 F.4th 104 (D.C. Cir. 2022) .................................................................. 18, 23

*Dennis Melancon, Inc. v. City of New Orleans*,
    703 F.3d 262 (5th Cir. 2012) ........................................................................ 15

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) .................................................................................... 21, 24

*Energy Transfer Partners, L.P. ("ETP") v. FERC*,
    567 F.3d 134 (5th Cir. 2009) ................................................................. *passim*

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
    762 F.2d 464 (5th Cir. 1985) ........................................................................ 15

*Free Enterprise Fund v. Publice Company Accounting Oversight Board*,
    561 U.S. 477 (2010) ...................................................................................... 17

*FTC v. Standard Oil Co. of Cal.*,
    449 U.S. 232 (1980) ................................................................................... 2, 17

*Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*,
    843 F.3d 325 (8th Cir. 2016) ........................................................................ 13

*In re al-Nashiri*,
    791 F.3d 71 (D.C. Cir. 2015) ........................................................................ 19

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ............................................................... 8, 19, 23

*Jarkesy v. SEC,*
    803 F.3d 9 (D.C. Cir. 2015) ......................................................................... 18, 19, 24

*Landrum v. Midland Credit Mgmt., Inc.,*
    2020 WL 8181822 (S.D. Tex. Dec. 31, 2020) ........................................................ 13

*Midship Pipeline Co., LLC v. FERC,*
    45 F.4th 867 (5th Cir. 2022) ................................................................................ 13

*Morgan v. Fletcher,*
    518 F.2d 236 (5th Cir. 1975) ................................................................................ 15

*Myers v. Nat'l Tenant Network, Inc.,*
    2015 WL 13797805 (W.D. Tex. Nov. 4, 2015) ...................................................... 28

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003) ............................................................................................. 10

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
    138 S. Ct. 1365 (2018) .......................................................................................... 9

*PennEast Pipeline Co., LLC v. New Jersey,*
    141 S. Ct. 2244 (2021) ........................................................................................... 3

*Pennzoil Co. v. FERC,*
    742 F.2d 242 (5th Cir. 1984) ............................................................................ 2, 17

*Pennzoil Co. v. FERC,*
    645 F.2d 394 (5th Cir. 1981) ................................................................................ 11

*SEC v. Cochran,*
    142 S. Ct. 2707 (2022) .......................................................................................... 20

*Sheldon v. Sill,*
    49 U.S. 441 (1850) ................................................................................................ 20

*Symetra Life Ins. Co. v. Rapid Settlements Ltd.,*
    612 F. Supp. 2d 759 (S.D. Tex. 2007) ................................................................... 16

*Tenneco, Inc. v. FERC,*
    688 F.2d 1018 (5th Cir. 1982) .............................................................................. 11

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtes. Project, Inc.,*
    576 U.S. 519 (2015) ............................................................................................. 22

iv

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) ............................................................................................ 2, 19

*Total Gas & Power N. Am., Inc. v. FERC*,
   859 F.3d 325 (5th Cir. 2017),
   *cert. denied*, 138 S. Ct. 2648 (2018) .............................................................. *passim*

*Total Gas & Power N. Am., Inc. v. FERC*,
   No. 4:16-cv-1250, 2016 WL 4800886 (S.D. Tex. Sept. 14, 2016) ...................... 1, 7

*Total Gas & Power N. Am., Inc. v. FERC*,
   No. 16-cv-1250, 2016 WL 3855865 (S.D. Tex. July 15, 2016) ...................... *passim*

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ............................................................................................. 9

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*,
   259 F.2d 921 (D.C. Cir. 1958) ................................................................................ 15

*Winter v. Nat. Res. Defense Council, Inc.*,
   555 U.S. 7 (2008) .................................................................................................... 15

*Wireless Agents, LLC v. T-Mobile USA, Inc.*,
   No. 3:05-cv-0094-D, 2006 WL 1540587 (N.D. Tex. June 6, 2006) ...................... 16

**Statutes**

5 U.S.C. § 704 ............................................................................................................ 10

15 U.S.C. § 717 ............................................................................................................ 3

15 U.S.C. § 717c-1 ............................................................................................... 4, 5, 6, 7

15 U.S.C. § 717m ......................................................................................................... 21

15 U.S.C. § 717n ......................................................................................................... 22

15 U.S.C. § 717r ........................................................................................................... 5

15 U.S.C. § 717t-1 ......................................................................................................... 9

15 U.S.C § 717u ..................................................................................................... 5, 11

15 U.S.C § 3414 ......................................................................................................... 23

16 U.S.C. § 823b ......................................................................................................... 23

28 U.S.C. § 1331 ............................................................................................ 20

Pub. L. No. 109-58, 119 Stat. 594 (Aug. 8, 2005) ...................................... 4

**Other Authorities**

Wright & Miller, 11A Fed. Practice & Procedure § 2948.1 (2d ed.)....................................16

## INTRODUCTION

Plaintiffs' motion for preliminary injunction should be denied because, under binding precedent, their claims are not ripe for adjudication, and they have not shown that they will suffer irreparable harm absent extraordinary relief. *See* Mot. for Prelim. Inj., ECF No. 23 (S.D. Tex. Dec. 16, 2022) (Mot.). Further, the courts of appeals have exclusive jurisdiction over Plaintiffs' claims, and thus, this Court lacks subject-matter jurisdiction.

In 2016, another judge in this district decided that virtually identical claims brought by the same plaintiffs against the Federal Energy Regulatory Commission (FERC or the Commission) were non-justiciable on ripeness grounds. *See Total Gas & Power N. Am., Inc. v. FERC*, No. 16-cv-1250, 2016 WL 3855865, at *10 (S.D. Tex. July 15, 2016) (Atlas, J.); *Total Gas & Power N. Am., Inc. v. FERC*, 2016 WL 4800886, at *3-4 (S.D. Tex. Sept. 14, 2016) (denying motion for reconsideration). The Fifth Circuit affirmed that decision, holding that "any challenge to FERC's authority to adjudicate [Natural Gas Act (NGA)] violations and impose a civil penalty must await a final determination of a violation and imposition of a penalty by FERC." *Total Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 339 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2648 (June 18, 2018). No one claims that FERC has issued a final order or imposed civil penalties. *Total* remains good law. Plaintiffs' complaint thus presents non-justiciable claims once more, and they cannot obtain relief.

Plaintiffs' claims of irreparable harm also fail. While they contend that the supposed loss of their constitutional freedoms qualifies as irreparable harm, Mot. at 25, Plaintiffs waited almost 18 months after FERC issued an order scheduling an administrative hearing to file suit. That delay alone is fatal to their request for

extraordinary relief. But even if it were not, the Supreme Court and the Fifth Circuit have ruled that the expense of participating in administrative proceedings does not constitute irreparable harm. *See, e.g., FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980); *Pennzoil Co. v. FERC*, 742 F.2d 242, 245 (5th Cir. 1984).

Finally, the Court lacks jurisdiction to entertain Plaintiffs' claims. Judge Atlas correctly concluded that the NGA's comprehensive administrative scheme demonstrates Congress's intent to channel judicial review to the courts of appeals and deprive the district courts of jurisdiction over claims like Plaintiffs'. *Total*, 2016 WL 3855865, at *11 (citing, *inter alia, Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)). Numerous courts agree. *See, e.g., Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 195-96 (3d Cir. 2018); *Am. Energy Corp. v. Rockies Exp. Pipeline LLC*, 622 F.3d 602, 605 (6th Cir. 2010); *Consolidated Gas Supply Corp. v. FERC*, 611 F.2d 951, 957 (4th Cir. 1979).

The Fifth Circuit's decision in *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021) (en banc)—now pending before the Supreme Court—does not compel a different conclusion here. While *Cochran* does not control this case, the Supreme Court's forthcoming decisions in that case (No. 21-1239) and its companion, *Axon Enterprise, Inc. v. FTC*, No. 21-86, will likely clarify this area of law. If the Court is not inclined to deny Plaintiffs' motion on ripeness or irreparable harm grounds, the most prudent course while the agency proceedings are being held in abeyance would be to stay this action pending the Supreme Court's decision in *Cochran* and *Axon*.[1]

---

[1] The District Court for the Northern District of Texas recently stayed litigation and administratively closed the case in *Rover Pipeline, LLC v. FERC*, No. 22-cv-232, ECF No.

## BACKGROUND

**1.     FERC's Statutory Authority**

FERC is responsible for administering the NGA, which gives the Commission jurisdiction over the interstate sale and transportation of natural gas. *See id.* § 717(b); *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2252 (2021). Since Congress passed the original act in 1938, FERC and its predecessors have had authority to set "just and reasonable" rates and determine the lawfulness of companies' charged rates. *See id.* § 717c(a), (e). FERC has also been able to "investigate any facts, conditions, practices, or matters" "to determine whether any person has violated or is about to violate any provisions" of the NGA or FERC's regulations or orders. *Id.* § 717m(a).

If FERC's enforcement staff developed evidence of a non-criminal violation, the Commission had two options prior to 2005: (1) it could seek an injunction in federal court to stop a violation, *see id.* § 717s(a), or (2) it could initiate administrative proceedings before the commissioners or an administrative law judge (ALJ) and impose equitable remedies, *see id.* §§ 717n(e), 717o, 717q. Equitable remedies could include disgorgement of profits and certain refunds—but not civil penalties. *See, e.g., Coastal Oil & Gas Corp. v. FERC*, 782 F.2d 1249, 1253 (5th Cir. 1986).

After the collapse of Enron and the Western Energy Crisis of 2000-2001 (when market manipulation drove up power prices in California), Congress passed the Energy

---

34 (N.D. Tex. May 24, 2022) (*Rover* Order). In the same order, the court also stayed the FERC proceeding at issue, subject to reopening by motion from either party.

Policy Act of 2005 and expanded FERC's authority. Pub. L. No. 109-58, 119 Stat. 594. Congress amended the NGA to prohibit market manipulation. *See* 15 U.S.C. § 717c-1. It also granted FERC authority to "assess[]" civil penalties "after notice and opportunity for public hearing." *Id.* § 717t-1(b).

### 2.     FERC's Administrative Enforcement Procedures

"FERC has established a comprehensive procedure for assessing civil penalties under the NGA." *Total*, 859 F.3d at 328; *see* Revised Policy Statement on Enforcement, 123 FERC ¶ 61,156 (2008); Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties, 117 FERC ¶ 61,317 (2006) (2006 Statement). This process can be broken into smaller steps, *see Total*, 859 F.3d at 328-29, but there are six main phases.

**Phase 1: Enforcement Staff Investigation.** The enforcement staff investigates potential violations using "conventional discovery methods." *Total*, 859 F.3d at 329. The staff then provides the alleged violator with its factual and legal conclusions, as well as any proposed penalties, and affords the alleged violator an opportunity to respond. If the staff remains convinced that a violation occurred and settlement discussions fail, the enforcement staff presents a recommendation to the Commission that it initiate enforcement proceedings. *See id.*

**Phase 2: Show Cause Order.** If FERC agrees with the enforcement staff's recommendation, it issues a show cause order that provides the alleged violator with notice of the material facts constituting the violation and the proposed penalty. This order does not constitute a finding of an NGA violation, and the alleged violator may file an answer contesting the order to show cause on both factual and legal grounds. *See id.*

4

**Phase 3: Hearing.** If FERC finds that a *prima facie* case exists of a violation after considering the alleged violator's answer, the matter proceeds to a hearing. In cases where the record is complete, FERC conducts a "paper hearing" and renders a decision on the parties' written submissions. 2006 Statement, 117 FERC ¶ at 62,533. In other cases, where material facts are disputed, FERC issues an order directing an ALJ to conduct fact-finding and render an initial decision. *Total*, 859 F.3d at 329.

**Phase 4: Final Order.** FERC reviews the ALJ's initial decision and any exceptions to that decision filed by the parties. FERC then issues a final order adjudicating whether an NGA violation was committed and assessing any civil penalties. *Id.*

**Phase 5: Rehearing and Judicial Review.** The alleged violator may seek rehearing of an adverse order before FERC within 30 days. 15 U.S.C. § 717r(a). And ultimately, an alleged violator "aggrieved by an order issued by the Commission … may obtain review in the [relevant] court of appeals." *Id.* § 717r(b).

**Phase 6: Enforcement.** If a violator does not pay an assessed penalty, FERC may bring action in federal district court to enforce its civil-penalty order. *Total*, 859 F.3d at 329; *see* 15 U.S.C § 717u.

### 3. Factual Background

Plaintiffs are a subsidiary of a French oil and gas company—one of the world's largest—and two of its trading managers. Compl., ECF No. 1 ¶¶ 12-14. FERC enforcement staff has alleged that, on 38 occasions between 2009 and 2012, Plaintiffs traded natural gas in certain ways to affect monthly index prices and, thus, benefit their other financial positions tied to those indices in violation of 15 U.S.C. § 717c-1, the anti-

manipulation rule. *See* Compl. ¶ 95; App'x to Pls.' Mot. for Prelim. Inj., ECF No. 23-1 at 2, 10-11 (App.). The staff has alleged that this manipulation caused nearly $90 million in harm to consumers and producers of natural gas. App. 14, 573. As a result, the staff has proposed civil penalties totaling $216.6 million, plus disgorgement of approximately $9 million in unjust profits. *Id.*

A lot of ground has been covered in this case since FERC first learned of Plaintiffs' alleged actions. A timeline of significant events follows.

**July 2012:** FERC received information regarding Plaintiffs' manipulative activities on its enforcement hotline and initiated an investigation. App. 27.

**February 2015:** Enforcement staff presented Plaintiffs with their preliminary findings based on written and oral evidence collected during discovery, to which Plaintiffs responded several months later. The parties engaged in settlement discussions through the remainder of 2015, which proved unfruitful. App. 27.[2]

**January 27, 2016:** Plaintiffs filed suit in this district, seeking a declaratory judgment that FERC lacks authority to issue a final order adjudicating a violation of the anti-manipulation rule and that FERC's administrative process violates the Appointments Clause and the Fifth and Seventh Amendments. *See Total*, 2016 WL 3855865, at *6-7.

---

[2] Plaintiffs Total Gas & Power North America, Inc. (TGPNA) and Tran were more successful in reaching a settlement with the Commodity Futures Trading Commission (CFTC). *See* App. 27-28. The CFTC found that these plaintiffs "attempted to manipulate monthly index settlement prices of natural gas" in four months between September 2011 and April 2012. App. 28. These plaintiffs agreed to pay $3.6 million and forgo trading certain natural gas for two years. App. 27.

**April 28, 2016:** FERC issued an order to show cause and notice of proposed penalty, formally charging Plaintiffs with market manipulation under 15 U.S.C. § 717c-1 and proposing civil penalties. App. 1-150.

**July 12, 2016:** Plaintiffs answered the order to show cause. App. 151-423. Among other factual and legal arguments, Plaintiffs contended—as they did in their declaratory-judgment action and in this case—that FERC may not adjudicate a violation of the NGA, that only district courts can do so, and, in any event, that FERC's administrative process violates various constitutional provisions. App. 310-21.

**July 15, 2016:** Judge Atlas dismissed Plaintiffs' complaint, concluding that their claims were non-justiciable because they were not yet ripe and that the Court lacked jurisdiction because "Congress intended for the claims Plaintiffs assert to be evaluated through the administrative process with judicial review in the court of appeals," *Total*, 2016 WL3855865, at *10-11. The district court further denied a motion for reconsideration. *See Total*, 2016 WL 4800886, at *12.

**June 8, 2017:** The Fifth Circuit affirmed the dismissal, holding that Plaintiffs' claims were not ripe for adjudication. *Total*, 859 F.3d at 335. The Supreme Court then denied a petition for certiorari a year later. 138 S. Ct. 2648 (June 18, 2018).

**July 15, 2021:** FERC issued an order establishing a hearing and directing an ALJ to conduct fact-finding regarding Plaintiffs' alleged violation of the anti-manipulation rule and certain issues relevant to civil penalties. App. 424, 427.

**July 17, 2022:** Plaintiffs moved to dismiss proceedings before the ALJ or, in the alternative, to stay proceedings pending further action in *Jarkesy v. SEC*, 34 F.4th 446 (5th

7

Cir. 2022). App. 551-571. Two weeks later, the enforcement staff filed an opposition, which explained why the *Jarkesy* panel's decision did not alter FERC's jurisdiction or the constitutionality of its administrative processes, *see* App. 572-677. Plaintiffs then sought to file a reply in November 2022 after the Fifth Circuit denied en banc review in *Jarkesy*, *see* 51 F.4th 644 (5th Cir. 2022). App. 678-700.

**December 2022:** Plaintiffs filed suit in this case and moved for a preliminary injunction ahead of a January 23, 2023 hearing before the ALJ. *See* ECF Nos. 1, 23. As is relevant for this motion, Plaintiffs assert that FERC's adjudication of NGA violations and assessment of civil penalties will violate Article III and the Seventh Amendment, that FERC's assignment of the case to an ALJ violates Article II, and that, to the extent the NGA authorizes in-house adjudication, it violates the nondelegation doctrine of Article I. Mot. at 8-20. FERC subsequently placed the administrative proceedings in abeyance for 90 days, with a hearing not to be scheduled before April 24, 2023, "to allow for briefing and a decision" on this motion. ECF No. 27-1 at 2.

**December 28, 2022:** The Commission voted to ratify and approve the appointment of FERC's ALJs. *See* Declaration of K. Bose ¶¶ 2-3 (attached as Exhibit A).

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" and "warranted only when the movant shows '(1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction is not granted, (3) that the injury outweighs any harm to the other party, and (4) that granting the injunction will not disserve the public interest.'" *CAE*

*Integrated, LLC v. Moov Techs., Inc.*, 44 F.4th 257, 261 (5th Cir. 2022). "The 'burden of persuasion on all of the four requirements … is at all times upon the plaintiff.'" *Id.*

<u>**ARGUMENT**</u>

**1.      The Motion Should Be Denied Under Circuit Precedent.**

Each of Plaintiffs' claims fails on the merits. But the motion for preliminary injunction has two fundamental problems that make engaging with each one unnecessary: Plaintiffs' claims are non-justiciable under binding Fifth Circuit precedent, and as a matter of law, Plaintiffs have failed to show irreparable harm absent the extraordinary relief requested. The motion should thus be denied.[3]

---

[3] To be clear, Plaintiffs' constitutional claims lack substantive merit too. First, in the Energy Policy Act, Congress "created new statutory obligations," i.e., the anti-manipulation rule, "provided for civil penalties for their violation, and committed exclusively to [the] administrative agency the function of deciding whether a violation has in fact occurred." *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 450 (1977). Enforcement actions enforcing the anti-manipulation rule thus involve public rights, and Congress may "properly assign[]" such "matter[s] to adjudication in a non-Article III tribunal," *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1379 (2018). Second, as explained below at 14, Plaintiffs' Article II-based claims fail because FERC has properly ratified the appointment of the ALJs and Plaintiffs do not assert any harm based on any removal protection. Third, unlike in the Exchange Act or the other statutes FERC administers, Congress did not grant the Commission or the alleged violators discretion to pursue adjudication of market manipulation in federal court. *See* 15 U.S.C. § 717t-1; *cf.* pp. 23, 26, *supra*. Rather, the discretion that FERC exercises is whether to initiate proceedings at all, which is inherently executive in nature. FERC is thus not exercising legislative power at all. *See, e.g., TransUnion LLC* v. *Ramirez*, 141 S. Ct. 2190, 2207 (2021) ("[T]he choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch."). If necessary, Defendants will timely address the deficiencies in these claims—and in Plaintiffs' other claims, which are not at issue in this motion—in responding to the complaint or at summary judgment.

A.    **Plaintiffs' Claims Are Not Ripe For Adjudication**

Plaintiffs have launched another preemptive attack on FERC's in-house administrative proceedings before the Commission has determined that Plaintiffs violated the NGA or assessed civil penalties. Judge Atlas and the Fifth Circuit previously concluded that such an attack was non-justiciable on ripeness grounds. *See Total*, 2016 WL 3855865, at *11; *Total*, 859 F.3d at 339. Nothing material has changed since then. Plaintiffs are thus unlikely to succeed on claims that the Court cannot adjudicate.

1.    "Ripeness is a justiciability doctrine designed 'to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). In this Circuit, courts look to "four factors in its ripeness analysis of FERC orders":

> (1) whether the issues presented are purely legal;
>
> (2) whether the challenged agency action constitutes 'final agency action,' within the meaning of [5 U.S.C. § 704];
>
> (3) whether the challenged agency action has or will have a direct and immediate impact upon the [plaintiffs]; and
>
> (4) whether the resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency.

*Energy Transfer Partners, L.P. v. FERC* (*ETP*), 567 F.3d 134, 139-40 (5th Cir. 2009).

2.    The Fifth Circuit has consistently held that challenges to FERC administrative proceedings are not ripe for judicial review before the Commission makes

10

a "conclusive determination" that a plaintiff "violated the NGA" or assesses a civil penalty. *Total*, 859 F.3d at 335 (relying, in part, on *ETP*, 567 F.3d at 141); *see, e.g., Total*, 2016 WL 3855865, at *10.[4]

Take *ETP*, for example. In that case, regulated entities filed a petition for review under § 717r(b) in the Fifth Circuit after FERC denied rehearing on the order to show case and issued an order establishing a hearing. 567 F.3d at 137. They challenged FERC's authority to adjudicate NGA violations and assess civil penalties in-house given 15 U.S.C. § 717u's reference to the district courts' "exclusive jurisdiction." *Id.* at 137-38.[5] Rather than addressing the merits of this argument, the Court held that "FERC's orders alleging violations of the NGA and setting the matter for hearing before an ALJ" were not "definitive ruling[s] or regulation[s]" and, thus, that "[t]he proper construction of the NGA must await resolution when and if the Commission determines that the NGA has been violated and assesses a penalty." *Id.* at 141, 146.

The Fifth Circuit later determined that *ETP* "control[led] [its] resolution" of Plaintiffs' appeal in their prior case, which was filed *after* FERC issued the 2016 order to show cause but *before* it issued the order establishing a hearing in 2021, and "decline[d]

---

[4] The Fifth Circuit's hesitancy to inject itself into FERC (or Federal Power Commission) proceedings is longstanding and not limited to cases related to market manipulation and civil penalties. *See, e.g., Tenneco, Inc. v. FERC*, 688 F.2d 1018, 1021-22 (5th Cir. 1982) (collecting cases); *Pennzoil*, 645 F.2d 394, 397-99 (5th Cir. 1981) (same); *Columbia Nitrogen Corp. v. Fed. Power Comm'n*, 559 F.2d 377, 378 (5th Cir. 1977).

[5] The Fifth Circuit noted that "[n]o party contends that a federal district court has jurisdiction to review FERC's order requiring a hearing in this case, and we are aware of no authority to that effect." 567 F.3d at 139; *see* Part 2.A, *infra*.

to address the merits of [Plaintiffs'] arguments regarding the NGA" on ripeness grounds. *Total*, 859 F.3d at 335. To start, the Court concluded that *ETP* foreclosed consideration of Plaintiffs' claim that § 717u prevents FERC from adjudicating a violation of the NGA or assessing civil penalties because, as in *ETP*, such an argument depends on FERC completing the various administrative steps and issuing a final order after reviewing an ALJ's initial order. *Id.* at 336. Because such a final order may never arrive—because, perhaps, the ALJ finds in Plaintiffs' favor or the Commission accepts their legal arguments—the issue is not ripe for judicial intervention. The Court further ruled that the same logic applies to Plaintiffs' constitutional claims: because they depended on FERC "schedul[ing] a hearing before an ALJ *and* issu[ing] a final order assessing civil penalties against [Plaintiffs]," Plaintiffs had to wait for those actions to happen before judicial review would be appropriate. *Id.* at 336 (emphasis added). Because Plaintiffs jumped the gun and did not wait for FERC to adjudicate the allegations or assess penalties, their claims were not ripe.

3.      *ETP* and *Total* control the outcome in this case. Relevant here, *see* Mot. at 8-20, Plaintiffs bring virtually the same claims at issue in their first case—statutory and constitutional objections to in-house adjudication and FERC's ALJs, *see Total*, 859 F.3d at 331. (They have added a nondelegation-doctrine claim this time around, but like their Article III/Seventh Amendment claims, their injury crystalizes only when FERC adjudicates a violation administratively rather than bringing an action in district court. *See* Mot. at 18.) And as in *ETP* and *Total*, FERC has not yet issued a final order adjudicating whether Plaintiffs violated the NGA or assessing civil penalties. Therefore,

under binding precedent, Plaintiffs' claims are not ripe and cannot be adjudicated by the Court. *See Total*, 859 F.3d at 339; *ETP*, 567 F.3d at 141-42.[6]

       4.     Plaintiffs' argument to the contrary—that *ETP* and *Total* have been "overtaken by intervening events," namely *Cochran*—fails for numerous reasons.

       First, *Cochran* does not purport to limit *ETP* or *Total*. *See* Mot. at 21. Rather, the Court found *ETP* and *Total* "materially distinguishable" and did not suggest that that those cases were suspect. *Cochran*, 20 F.4th at 213. Cochran did not ask the en banc court to overrule them; in fact, she suggested that they remained good law (as they are). *See* Appellant's Opening Br. on Reh'g En Banc, *Cochran v. SEC*, No. 19-10396, 2020 WL 7066339, at *49 n.20 (5th Cir. Nov. 30, 2020); Appellant's Mot. for Leave to File a Reply Br. on Reh'g En Banc, *Cochran v. SEC*, No. 19-10396, 2021 WL 151858, at *27 (5th Cir. Jan. 13, 2021). And subsequent Fifth Circuit decisions have not applied Plaintiffs' gloss to *Total*, even when rejecting FERC's ripeness arguments in other contexts. *See Midship Pipeline Co., LLC v. FERC*, 45 F.4th 867, 873 (5th Cir. 2022). The Court is bound to follow *ETP* and *Total* and apply them with full force to analogous facts. *See, e.g., Landrum v. Midland Credit Mgmt., Inc.*, 2020 WL 8181822, at *3 (S.D. Tex. Dec. 31, 2020).

---

[6] Plaintiffs must have a valid cause of action to proceed in federal court. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Plaintiffs' complaint does not identify one. The Declaratory Judgment Act does not create a cause of action. *See, e.g., Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-71 (5th Cir. 1990). Nor does the NGA. *See, e.g., Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329-331 (8th Cir. 2016). If Plaintiffs seek to proceed under the Administrative Procedure Act, their claims fail because they do not challenge final agency action. *Cf. ETP*, 567 F.3d at 140-42.

Second, even under Plaintiffs' reading of *Total* after *Cochran*, only their ALJ-related Article II claims are potentially ripe, and those claims are now defective on their face according to Plaintiffs' own brief. Like the SEC, *Cochran*, 20 F.4th at 198 n.3, FERC "cured" any Appointments Clause issues when the Commission ratified the appointment of all ALJs, Mot. at 16; *see* Bose Decl. ¶¶ 2-3. As to Plaintiffs' removal-power claim, the Fifth Circuit has held that, following *Collins v. Yellen*, 141 S. Ct. 1761 (2021), plaintiffs must plead harm—specifically, "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor"—to obtain relief. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022); *see Burgess v. FDIC*, --- F. Supp. 3d ---, 2022 WL 17173893, at *9 (N.D. Tex. Nov. 6, 2022) (rejecting removal power claim for failure to plead harm). Plaintiffs' complaint is wholly devoid of such allegations.

Third, to the extent Plaintiffs' Article II claims can proceed and they assert that FERC's issuance of the order establishing a hearing makes *Total* distinguishable, *see* Mot. at 22, that no longer holds after FERC's order placing the administrative proceeding into abeyance. *See* ECF No. 27-1 at 2. It is unclear when—or if—Plaintiffs "will be forced to undergo an administrative trial before an agency and an official that cannot constitutionally adjudicate the Commission's allegations." Mot. at 22. There is thus no substantive difference between the status quo in this case and *Total*.

14

**B.      Plaintiffs Have Not Shown Irreparable Harm Absent The Extraordinary Relief They Seek**

The Court should also deny the motion because Plaintiffs have not shown that Defendants' actions are causing—or will imminently cause—irreparable and cognizable harm. The only harm Plaintiffs identify in their motion is a supposed "loss of constitutional freedoms," *i.e.*, being forced "to have their rights and obligations determined by a constitutionally invalid adjudicator." Mot. at 25. That is insufficient here.

1.      Even if a plaintiff is deemed likely to succeed on the merits, federal courts may not enter a preliminary injunction unless the movant "demonstrates that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "Federal courts have long recognized that, when 'the threatened harm is more than de minimis, it is not so much the magnitude but the irreparability that counts for purposes of a preliminary injunction." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). "Mere injuries, however substantial, in terms of money, time[,] and energy necessarily expended in the absence of [an injunction], are not enough." *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weights heavily against a claim of irreparable harm." *Id.*; *see Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012).

2.      Plaintiffs' alleged harm fails to meet this standard first and foremost because they delayed filing suit for more than a year after FERC issued the order

establishing a hearing. This Court has recognized that "[d]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction" and that "[a]bsent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *Symetra Life Ins. Co. v. Rapid Settlements Ltd.*, 612 F. Supp. 2d 759, 774 (S.D. Tex. 2007) (quoting *Wireless Agents, LLC v. T-Mobile USA, Inc.*, 2006 WL 1540587, at *3 (N.D. Tex. June 6, 2006)); *see* Wright & Miller, 11A Fed. Practice & Procedure § 2948.1 (2d ed.) ("A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction."). In this case, FERC issued its order establishing a hearing on July 15, 2021. App. 424. Plaintiffs waited nearly a year before filing their motion to dismiss before the agency and almost another six months after that before filing this case. *See* App. 551; ECF No. 1. According to Plaintiffs, their claims do not require factual development, Mot. at 22, and in any event, nothing materially changed between July 2021 and December 2022 to cause or exacerbate Plaintiffs' supposed injuries. They simply waited until shortly before the ALJ hearing was to start before launching this lawsuit. That delay, as in *Symetra*, "militates against the issuance of a preliminary injunction." 612 F. Supp. 2d at 774.

3.      Putting aside Plaintiffs' delay, their claimed harms are not cognizable or irreparable for purposes of a preliminary injunction.

First, Plaintiffs frame their expected injuries in constitutional terms—that "their rights and obligations" will be "determined by a constitutionally invalid adjudicator," Mot. at 25, but as discussed above at 11-14, such an injury would occur only upon

issuance of a final order and assessment of civil penalties by FERC. The only immediate burden they face is the cost of defending themselves before the agency if and when proceedings resume. But the Supreme Court has held that "the expense and annoyance of litigation is 'part of the social burden of living under government'" and that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'" *Standard Oil*, 449 U.S. at 244. The Fifth Circuit has applied *Standard Oil* in challenges to FERC's administrative proceedings before and held that "the burden of participating in the proceeding before the ALJ is [not] sufficient to constitute … irreparable harm." *Pennzoil*, 742 F.2d at 245; *accord ETP*, 567 F.3d at 141.[7] Under this precedent, Plaintiffs' purported harms do not justify extraordinary relief.

Second, even if that were not true, it is unclear that an injunction would alleviate such burdens to the extent they are cognizable. Under Plaintiffs' interpretation of the NGA, FERC is authorized to "hold[] a 'hearing' to 'assess' the penalty it proposes before going to federal district court to adjudicate that proposed penalty." Compl. ¶ 75; *see Total*, 859 F.3d at 338 ("Total … concedes that FERC is authorized to conduct a proceeding regarding the alleged violation and penalty *prior* to any action being brought in the district court."). "This means that it is undisputed that, under either [side's] interpretation

---

[7] *Cochran* is not to the contrary. In that case, the en banc court distinguished *Standard Oil*'s discussion of irreparable harm for purposes of jurisdiction stripping, finding the case "irrelevant to our inquiry." *Cochran*, 20 F.4th at 210. But the court "[took] no position regarding *Standard Oil*'s relevance to … whether [Cochran] is entitled to a preliminary injunction," and it went on to note that in *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 508, 513 (2010), the Supreme Court found a constitutional violation but refused to grant injunctive relief. *Cochran*, 20 F.4th at 210 n.14.

of the NGA, [Plaintiffs]would have to undergo a proceeding conducted by FERC *prior* to any district court proceeding" and that Plaintiffs "would be forced to undergo some burden and expense in FERC proceedings prior to any proceedings in district court." *Total*, 859 F.3d at 338. Plaintiffs do not explain how their burden would be any different if they were to succeed on their claims. And accordingly, it means they have failed to establish irreparable harm.

Finally, Plaintiffs' purported harms are not irreparable in the sense that they will be deprived of judicial review and corrective relief at the end of the administrative process. Courts have repeatedly recognized that plaintiffs can make such claims *after* "FERC issues a final order finding a[n] NGA violation and assessing a civil penalty." *Total*, 859 F.3d at 336; *ETP*, 567 F.3d at 146. Indeed, "courts of appeals often consider facial constitutional claims—including separation-of-powers claims—in reviewing final orders" from agencies, such as FERC and the SEC. *Jarkesy v. SEC*, 803 F.3d 9, 19 (D.C. Cir. 2015). Plaintiffs are expected to present such claims to the agency and then proceed to federal court even when the underlying agency proceeding is found to be invalid. *See, e.g., id.* at 28; *Delaware Riverkeeper Network v. FERC*, 45 F.4th 104, 115 (D.C. Cir. 2022).

Allowing piecemeal litigation whenever a plaintiff asserts a structural constitutional claim is contrary to the courts' ordinary functioning and would cause major distortions in district court dockets. Courts routinely find that separation-of-powers claims can be adjudicated on final appeal or review. *See, e.g., In re al-Nashiri*, 791 F.3d 71, 80 (D.C. Cir. 2015) (rejecting mandamus petition); *Jarkesy*, 34 F.4th at 450-65 (addressing constitutional claims on petition for review); *Jarkesy*, 803 F.3d at 26 (noting

criminal cases with constitutional claims adjudicated only on appeal). Were the judiciary to permit piecemeal litigation, as Plaintiffs seem to contemplate here, there is significant risk that criminal defendants—long required to litigate constitutional issues with proceedings on appeal—would have authority to similarly challenge supposedly unconstitutional action on an interlocutory basis, regardless of actual harm suffered. That result would be detrimental to the courts, the government, and other litigants.

For these reasons, Plaintiffs have failed to demonstrate irreparable harm—and their motion should be denied.

## 2.    The Court Lacks Subject-Matter Jurisdiction

Plaintiffs are unlikely to succeed on their claims for another fundamental reason— the Court lacks subject-matter jurisdiction. Congress explicitly and implicitly stripped the district courts of jurisdiction over claims concerning FERC's proceedings. Indeed, Judge Atlas concluded that "[t]he NGA contains a comprehensive scheme for administrative adjudication followed by judicial review," that the NGA's "text, structure, and purpose" indicate that Congress intended adjudications of market-manipulation violations and assessments of civil penalties to follow that process, and that challenges to that process can be reviewed only in the court of appeals on a petition for review. *Total*, 2016 WL 3855865, at *22 (citing, *inter alia*, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)).

That decision remains correct. Contrary to Plaintiffs' contentions, Mot. at 24, *Cochran* does not foreclose the Court from reaching the same conclusion, *see* 24 F.4th at 211. The Supreme Court has, however, granted certiorari and heard argument in that case to address "[w]hether a federal district court has jurisdiction to hear a suit in which the

respondent in an ongoing [SEC] administrative proceeding seeks to enjoin that proceeding, based on an alleged constitutional defect in the statutory provisions that govern the removal of [ALJ] who will conduct the proceeding." Pet. for Certiorari at I, *SEC v. Cochran*, No. 21-1239, 2022 WL 769474 (Mar. 11, 2022); *see SEC v. Cochran*, 142 S. Ct. 2707 (2022).[8] The Supreme Court's decision in *Cochran* will likely shape the parties' arguments on this threshold issue of jurisdiction and may resolve it entirely. Therefore, if the Court is not inclined to deny the motion for lack of ripeness or irreparable harm, it should stay proceedings pending the Supreme Court's decision. *See Rover* Order.

A.    **District Courts Do Not Have Jurisdiction To Consider Plaintiffs' Statutory And Constitutional Claims**

Congress controls the jurisdiction of the district courts and the courts of appeals. *Sheldon v. Sill*, 49 U.S. 441, 449 (1850). While 28 U.S.C. § 1331 provides district courts with a general grant of original jurisdiction over constitutional claims, Congress may—explicitly or implicitly—"leapfrog[] district courts by channeling claims through administrative review and directly to federal appellate courts." *Bank of La. v. FDIC*, 919 F.3d 916, 923 (5th Cir. 2019). Courts determine whether Congress has implicitly stripped the district courts of jurisdiction by applying the *Thunder Basin* factors: they ask (1) "whether it is 'fairly discernible'" from the statute's "text, structure, and purpose"

---

[8] The Court also granted certiorari in *Axon Enterprise, Inc. v. FTC*, 142 S. Ct. 895 (2022), which presents the similar question "[w]hether Congress impliedly stripped federal district courts of jurisdiction over constitutional challenges to the [FTC's] structure, procedures, and existence by granting the courts of appeals jurisdiction to 'affirm, enforce, modify, or set aside' the Commission's cease-and-desist orders." Pet. for Certiorari at i, *Axon Enterp., Inc. v. FTC*, No. 21-86, 2021 WL3127635 (July 20, 2021).

"that Congress precluded district court jurisdiction," and (2) whether the plaintiff's claims are the "type that Congress intended to be reviewed" within the administrative scheme. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10, 15 (2012). As Judge Atlas rightly held, those factors in this case show that Congress intended to strip the district courts of jurisdiction over claims like those Plaintiffs bring here. *Total*, 2016 WL 3855865, at *22.

1.      As to the first set of factors, the NGA's text, structure, and purpose show that Congress intended to vest the courts of appeals with exclusive jurisdiction over claims challenging FERC proceedings. Section 717r(b) expressly states that the courts of appeals have "exclusive" jurisdiction to "affirm, modify, or set aside [a FERC] order in whole or in part." Courts have repeatedly interpreted this provision—on its own—to deprive district courts of jurisdiction. *See, e.g.*, *Adorers of the Blood of Christ*, 897 F.3d at 195; *Am. Energy Corp.*, 622 F.3d at 605; *see also Atlanta Gas Light Co. v. S. Nat. Gas Co.*, 338 F. Supp. 1039, 1049-50 & n.11 (N.D. Ga. 1972), *aff'd in relevant part sub nom.*, *Atlanta Gas Light Co. v. Fed. Power Comm'n*, 476 F.2d 142, 150-51 (5th Cir. 1973).

But that aside, as Judge Atlas recognized, it is fairly discernible from the other provisions of the NGA that Congress meant for the courts of appeals' jurisdiction to be exclusive here. The statute grants FERC broad authority to investigate "to determine whether any person has violated" the statute or the agency's rules and orders. 15 U.S.C. § 717m(a). It also provides guidance on how those hearings are to be conducted and how, where, and under what terms the Commission's decisions are to be reviewed. *Total*, 2016 WL 3855865, at *14, 17-18 (citing 15 U.S.C. §§ 717n, 717o, 717r(b)). District courts, notably, do not have a clear role in that process, as the NGA specifies the few instances in which

the district courts are to be involved: assisting in discovery, § 717m(d), enjoining an ongoing violation, §§ 717s(a), 717u, issuing writs of mandamus, § 717s(b), enforcing the Commission's orders or presiding over criminal proceedings, § 717u. "This calibrated structure," like that governing the FDIC, expresses "Congress's intent to preclude district court jurisdiction over claims against [FERC] arising out of enforcement proceedings." *Bank of La.*, 919 F.3d at 924.

Practice confirms this interpretation of the NGA. Prior to 2005, FERC routinely brought administrative enforcement actions—without involving the district courts—and both the Commission's findings and the remedies it imposed were repeatedly upheld by the courts of appeals. *See, e.g.*, *Total*, 2016 WL 3855865, at *15 & nn.103-105 (collecting cases). And Plaintiffs do not identify a single case to the contrary.

The Energy Policy Act's expansion of FERC's authority in 2005 to include assessment of civil penalties bolsters this understanding of congressional intent to limit district court jurisdiction. When a judicial consensus exists regarding a statute's meaning, particularly when it mirrors administrative practice, courts presume Congress is aware of it. *See, e.g.*, *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtes. Project, Inc.*, 576 U.S. 519, 536-37 (2015); *cf. Bankamerica Corp. v. United States*, 462 U.S. 122, 131 (1983) ("established practice may shed light on the extent of power conveyed by general statutory language"). Congress's addition of civil-penalty authority to the NGA—without specifying that, unlike other enforcement actions, FERC must proceed in district court—shows that the ordinary processes were meant to apply. That is particularly true here when Congress made a different choice with respect to the civil-penalty provisions in the Federal Power

Act, 16 U.S.C. § 823b(c)-(d), and the Natural Gas Policy Act, 15 U.S.C. § 3414(b)(6)(E)-(F), which FERC also administers. *Cf. Granholm ex rel. Mich. Dep't of Nat. Res. v. FERC*, 180 F.3d 278, 280 n.2 (D.C. Cir. 1999) ("*Substantially identical* provisions of the Natural Gas Act and the Federal Power Act are to be interpreted consistently with each other." (emphasis added)). Those statutes, unlike the NGA, explicitly envision a role for district courts; Congress's conspicuous silence regarding the NGA demonstrates it intended to "rely on the established administrative process." *Total*, 2016 WL 3855865, at *17; *see ETP*, 567 F.3d at 138. For these and other reasons, Judge Atlas's conclusion that it was fairly discernible that Congress intended to channel judicial review to the courts of appeals, was correct.

2      As to the second set of *Thunder Basin* factors, Judge Atlas was correct to find that Plaintiffs' claims were "of the type Congress intended to be reviewed within the statutory structure." *Id.* at *19. Just like before, with "the most important *Thunder Basin* factor"—whether meaningful review is available—"[t]here is no contention that any of the issues raised by Plaintiffs cannot be addressed eventually by a United States court of appeals pursuant to [§ 717r(b)]." *Id.* at *20. The NGA expressly authorizes judicial review in the courts of appeals, and if plaintiffs raise their constitutional claims before the agency, the courts can adjudicate them. *See, e.g.*, *Delaware Riverkeeper*, 45 F.4th at 115. And courts routinely do in these situations, as Plaintiffs' main case—*Jarkesy*, in which a plaintiff presented these claims after an SEC administrative process, 34 F.4th at 449-50— demonstrates. "If this is not 'meaningful judicial review' of [their] constitutional claims," it is difficult to "know what would qualify." *Bank of La.*, 919 F.3d at 926.

Plaintiffs' claims are also not wholly collateral to the administrative proceedings. This is not a situation where Plaintiffs are outsiders to the proceedings being challenged; they are participants. *See Total*, 2016 WL 3855865, at *21 & n.142 (citing *Jarkesy*, 803 F.3d at 23). These claims, in other words, are the means through which they are challenging the enforcement proceeding in which they are enmeshed. *Cf. Elgin*, 567 U.S. at 22; *Jarkesy*, 803 F.3d at 23. Moreover, Plaintiffs are not challenging the existence of the agency or whether ALJs can conduct any proceedings. *Compare Total*, 2016 WL 3855865, at *21 & n.141. Rather, as before, they want "the agency to alter its procedures" as it proceeds in adjudicating their alleged violations. *Id.* at *21. Invoking structural constitutional protections does not immediately assign "talismanic significance" to Plaintiffs' objections. *Bohon v. FERC*, 37 F.4th 663, 666 (D.C. Cir. 2022). Their claims are thus not wholly collateral to the proceedings.

Finally, the agency's expertise is not irrelevant to the claims. As Judge Atlas found, "FERC's expertise is particularly relevant to Plaintiffs' Fifth Amendment and APA claims," because they can be evaluated only on a full factual record that the Commission must generate. *Total*, 2016 WL 3855865, at *22. And the Commission is well-positioned, given its deep familiarity with the NGA and related statutes, to interpret its own jurisdiction and the best way to give effect to Congress's directive to investigate market manipulation and assess penalties.

Taken together, the *Thunder Basin* factors demonstrate that Congress intended to strip the district courts of jurisdiction over claims, like Plaintiffs', and thus that the Court lacks jurisdiction over these claims.

24

### B.     *Cochran* Does Not Resolve The Court's Jurisdiction

Plaintiffs do not meaningfully engage with Judge Atlas's analysis in their motion. Instead, they assert once more that her ruling "has been overtaken be intervening precedent"—*Cochran*—and that that case "makes clear that such challenges to agency proceedings can proceed in district court *irrespective of a statutory review scheme*." Mot. at 23-24 (emphasis added). Plaintiffs are incorrect on both counts.

First, *Cochran* itself stated that "this case presents only the issue of whether the Exchange Act divested district court jurisdiction over claims that SEC ALJs are unconstitutionally insulated from the President's removal power; our holding extends no further, and the result in other cases, *even those concerning similar statutory schemes and claims*, may be different." 20 F.4th at 211 (emphasis added).[9] The decision itself thus countermands Plaintiffs' broad claim regarding *Cochran*'s reach.

Second, as discussed briefly above (at 23), there are significant features of the NGA that distinguish it from the Exchange Act and even from the other statutes that FERC administers. For instance, unlike with the Exchange Act, the Federal Power Act, and the Natural Gas Policy Act, the NGA does not provide the agency or the alleged violator with the discretion to choose between administrative or district court proceedings. Section 717t-1(b) states that "[t]he penalty shall be assessed *by the Commission* after notice and

---

[9] *Cochran* noted that "even if Congress did not divest jurisdiction, other doctrines, such as … ripeness, … may prevent district courts from hearing challenges to ongoing administrative enforcement proceedings." 20 F.4th at 211. As explained above, *see* Part 1.A, ripeness bars consideration of Plaintiffs' claims in this case.

opportunity for public hearing," and the NGA does not otherwise carve out a role for the district court. (Emphasis added.)[10] *Cochran* is further distinguishable on that basis alone.

### C.     In The Alternative, The Court May Stay Proceedings

No matter how the Supreme Court resolves *Cochran* and *Axon*, its decisions will likely shape the parties' arguments on this threshold issue of jurisdiction and may resolve it entirely. Therefore, if the Court does not deny the motion on ripeness or irreparable harm grounds, these proceedings should be stayed pending the Supreme Court's decision in *Cochran* and *Axon* to conserve judicial and party resources. *See Rover* Order. Because the administrative proceedings are currently being held in abeyance, Plaintiffs will suffer no harm from such an action.

1.     "A district court has the inherent power to stay cases to control its docket and promote efficient use of judicial resources." *Coker v. Select Energy Servs., LLC*, 161 F. Supp. 3d 492, 494-95 (S.D. Tex. 2015). A court considers three factors in determining whether a stay is appropriate: (1) "the potential prejudice to plaintiffs," (2) "the hardship to defendants if the stay is denied," and (3) "the judicial efficiency in terms of the

---

[10] Plaintiffs' reading of § 717u (*see* Compl. ¶¶ 148-66) creates significant tension and redundancy in § 717u itself and within the statute more broadly. The first sentence of § 717u states that district courts have "exclusive jurisdiction *of*" three things: (1) "violations of [the NGA] or any rules, regulations, or orders thereunder," (2) "suits in equity and actions at law brought to enforce" the NGA or FERC's orders, and (3) "to enjoin" violations. The second and third sentences of § 717u then go on to establish the correct venues for "criminal proceeding[s]," actions enforcing FERC orders, and suits to enjoin violations of the NGA. If the first sentence gives the district courts "exclusive jurisdiction" over any claim related to civil "violations," it presumably would establish the correct venue. Moreover, such a reading—assuming Congress did not intend civil-penalty proceedings to proceed in the normal course, *contra* pp. 22-23, *supra*— makes the specific venue and jurisdictional provisions in §§ 717m(d) and 717s superfluous.

simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

2. The three factors support staying proceedings if the Court is not inclined to deny the motion on ripeness or irreparable harm grounds. First, Plaintiffs will not be prejudiced if the Court stays district court proceedings. *Cf. Rover* Order. That order recognized that there are "two cases arising out of substantially similar facts [that] are pending before the Supreme Court" and paused the litigation and the underlying FERC proceeding until the Supreme Court decides those cases. *Id.* Given that administrative proceedings are currently being held in abeyance, Plaintiffs are currently receiving the benefit of a temporarily pause in administrative proceedings—what they seek with the injunction. A stay of district court proceedings does not prejudice them, particularly when Plaintiffs asked FERC to stay the administrative proceedings citing *Rover*. App. 683.

Second, if the Court does not stay proceedings and decides the merits of Plaintiffs' claims, there is a strong likelihood that further motions practice—before this Court or the Fifth Circuit—will be necessary following the Supreme Court's decision. Any proceedings that take place between now and then could be rendered meaningless.

Third, waiting for the Supreme Court's decision "will avoid expending unnecessary judicial resources." *Coker*, 161 F. Supp. 3d at 495. Indeed, in this situation, where a relevant Supreme Court or Fifth Circuit decision will soon issue, courts have repeatedly stayed proceedings to allow for potential simplification or resolution of threshold issues. *See, e.g., id.*; *Bilberry v. JPMorgan Chase Bank, N.A.*, 2021 WL 536440, at *2 (W.D. Tex. Jan. 13, 2021); *Myers v. Nat'l Tenant Network, Inc.*, 2015 WL 13797805, at *2-3

27

(W.D. Tex. Nov. 4, 2015). The Court should do the same if it is not inclined to deny the

motion on the grounds outlined above.

**<u>CONCLUSION</u>**

For these reasons, Plaintiffs' motion for a preliminary injunction should be denied.

Dated: February 6, 2023                          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALAMDAR HAMDANI
United States Attorney

CHRISTOPHER R. HALL
Assistant Branch Director

/s/ Christopher A. Eiswerth
Christopher A. Eiswerth (D.C. Bar 1029490)
Attorney in Charge / Admitted Pro Hac Vice
Trial Attorney
U.S. Department of Justice
Federal Programs Branch, Civil Division
1100 L St., N.W.
Washington, D.C. 20005
Tel: (202) 305-0568 / Fax: (202) 616-8460
christopher.a.eiswerth@usdoj.gov

Jimmy A. Rodriguez
Assistant United States Attorney
Southern District of Texas
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
jimmy.rodriguez2@usdoj.gov

*Counsel for Defendants*

28
