## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| TotalEnergies Gas & Power North America, Inc.; Aaron Hall; and Therese Tran, <br><br>      Plaintiffs, <br><br>   v. <br><br> Federal Energy Regulatory Commission; Chairman Richard Glick; Commissioner James Danly; Commissioner Allison Clements; Commissioner Mark C. Christie; Commissioner Willie L. Phillips; and Acting Chief Administrative Law Judge Andrew Satten, in their official capacities, <br><br>      Defendants. | No. 4:22-cv-4318 <br><br> Hon. Lynn N. Hughes |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

ARGUMENT IN REPLY ...................................................................... 4

    I.    Each of the Government's Threshold Arguments Fails........................ 5

        A.    This Case Is Ripe Under *Cochran* .................................... 5

        B.    Plaintiffs Will Suffer Irreparable Harm Absent Relief............. 12

        C.    This Court Has Subject-Matter Jurisdiction............................ 18

    II.    Plaintiffs Are Likely to Succeed on the Merits of their Claims............ 23

    III.    This Court Should Reject the Government's Suggestion to Stay this Case but not the Underlying FERC Proceeding. ........................... 29

CONCLUSION................................................................................... 31

CERTIFICATE OF SERVICE......................................................... 33

i

# TABLE OF AUTHORITIES

**Cases:**                                                                              **Page(s)**

*Arbuckle Mountain Ranch of Tex., Inc.* v. *Chesapeake Energy Corp.*,
810 F.3d 335 (5th Cir. 2016) ................................................................................ 23

*Armstrong* v. *Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ............................................................................................. 12

*Bond* v. *United States*,
564 U.S. 211 (2011) ............................................................................................. 12

*Bowsher* v. *Synar*,
478 U.S. 714 (1986) ....................................................................................... 12, 17

*BST Holdings, LLC* v. *OSHA*,
17 F.4th 604 (5th Cir. 2021).............................................................................. 12

*Burgess* v. *FDIC*,
No. 22-cv-100, 2022 WL 17173893 (N.D. Tex. Nov. 6, 2022)................................... 1

*Carr* v. *Saul*,
141 S. Ct. 1352 (2021) ......................................................................................... 20

*Catlin Syndicate Ltd.* v. *Imperial Palace of Miss., Inc.*,
600 F.3d 511 (5th Cir. 2010) .............................................................................. 21

*Centennial Ins. Co.* v. *Ryder Truck Rental, Inc.*,
149 F.3d 378 (5th Cir. 1998) .............................................................................. 21

*Cmty. Fin. Servs. Ass'n of Am., Ltd.* v. *CFPB*,
51 F.4th 616 (5th Cir. 2022)........................................................................... 26, 27

*Cochran* v. *SEC*,
20 F.4th 194 (5th Cir. 2021) (en banc) ......................................................... *passim*

*Collins* v. *Yellen*,
141 S. Ct. 1761 (2021) ..................................................................................... 26, 27

*Consumers' Rsch.* v. *Consumer Prod. Safety Comm'n*,
592 F. Supp. 3d 568 (E.D. Tex. 2022) ................................................................ 28

*Elrod* v. *Burns*,
427 U.S. 347 (1976) ............................................................................................. 12

*Energy Transfer Partners, L.P.* v. *FERC*,
567 F.3d 134 (5th Cir. 2009) ................................................................................ 5

**Cases—Continued:** **Page(s)**

*Free Enter. Fund* v. *Pub. Co. Accounting Oversight Bd.*,
   561 U.S. 477 (2010) ..................................................... 12, 17, 19

*FTC* v. *Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980) ............................................................. 14

*Gates* v. *Strain*,
   885 F.3d 874 (5th Cir. 2018) .................................................. 18

*Gulfport Energy Corp.* v. *FERC*,
   41 F.4th 667 (5th Cir. 2022) ................................................. 5, 6

*Janvey* v. *Alguire*,
   647 F.3d 585 (5th Cir. 2011) .................................................. 15

*Jarkesy* v. *SEC*,
   34 F.4th 446 (5th Cir. 2022) ........................................... *passim*

*Jarkesy* v. *SEC*,
   803 F.3d 9 (D.C. Cir. 2015) ................................................... 19

*John Doe Co.* v. *CFPB*,
   849 F.3d 1129 (D.C. Cir. 2017) ............................................. 13

*Knick* v. *Twp. of Scott*,
   139 S. Ct. 2162 (2019) ........................................................... 9

*Lucia* v. *SEC*,
   138 S. Ct. 2044 (2018) ......................................................... 26

*Midship Pipeline Co.* v. *FERC*,
   45 F.4th 867 (5th Cir. 2022) ................................................. 5, 6

*Nat'l Fed'n of Indep. Bus.* v. *Dep't of Lab.*,
   142 S. Ct. 661 (2022) (per curiam) ........................................ 15

*Nat'l Oilwell Varco, L.P.* v. *Garza*,
   No. CV H-22-2006, 2022 WL 3098238 (S.D. Tex. Aug. 4, 2022) ............. 29

*Opulent Life Church* v. *City of Holly Springs*,
   697 F.3d 279 (5th Cir. 2012) .................................................. 13

*Racal Survey U.S.A., Inc.* v. *M/V COUNT FLEET*,
   231 F.3d 183 (5th Cir. 2000) .................................................. 10

**Cases—Continued:**                                                    **Page(s)**

*Seila Law LLC* v. *CFPB*,
   140 S. Ct. 2183 (2020) ................................................................. 15

*Smith* v. *Reg'l Transit Auth.*,
   756 F.3d 340 (5th Cir. 2014) ...................................................... 10

*Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ..................................................................... 10

*Susan B. Anthony List* v. *Driehaus*,
   573 U.S. 149 (2014) ..................................................................... 12

*Symetra Life Ins. Co.* v. *Rapid Settlements Ltd.*,
   612 F. Supp. 2d 759 (S.D. Tex. 2007) .................................... 13

*Thunder Basin Coal Co.* v. *Reich*,
   510 U.S. 200 (1994) ....................................................... 18, 19, 20

*Total Gas & Power N. Am., Inc.* v. *FERC*,
   859 F.3d 325 (5th Cir. 2017) ................................................ 5, 14

*United States* v. *Gonzalez-Lopez*,
   548 U.S. 140 (2006) ..................................................................... 21

*United States* v. *Harris*,
   960 F.3d 689 (5th Cir. 2020) ...................................................... 12

*Vidal* v. *Gonzales*,
   491 F.3d 250 (5th Cir. 2007) ...................................................... 17

**Statutes:**

15 U.S.C. § 78y(a)(1) ....................................................................... 22

15 U.S.C. § 717r(b) ................................................................... 18, 22

28 U.S.C. § 1331 ............................................................... 18, 22, 23

42 U.S.C. § 7171(a) ......................................................................... 26

42 U.S.C. § 7171(c) ......................................................................... 26

**Other Authorities:**

Defs.' Suppl. Br. Opposing Stay, *Rover Pipeline, LLC* v. *FERC*,
   No. 3:22-cv-00232 (N.D. Tex. Apr. 5, 2022), ECF No. 28 ....................................... 30

**Other Authorities—Continued:** <u>**Page(s)**</u>

Opp'n to Pl.-Appellant's Mot. for Inj. Pending Appeal, *Cochran* v. *SEC*,
    No. 19-10396 (5th Cir. Aug. 26, 2019), ECF No. 64 ................................................ 17

Order, *Cochran* v. *SEC*,
    No. 19-10396 (5th Cir. Sept. 24, 2019), ECF No. 77-2 ............................................ 17

Order, *Rover Pipeline, LLC* v. *FERC*,
    No. 3:22-cv-00232 (N.D. Tex. May 24, 2022), ECF No. 34 .................................. 1, 30

**INTRODUCTION**

Under binding Fifth Circuit precedent, the in-house bench trial that FERC stands poised to initiate in just a few weeks, threatening Plaintiffs with a quarter-billion dollars or more in penalties and other relief, is plainly unconstitutional. Other district courts in this Circuit have so recognized, and have halted similar federal agency proceedings challenged on largely the same grounds that Plaintiffs raise here. See Order at 1, *Rover Pipeline, LLC* v. *FERC*, No. 3:22-cv-00232 (N.D. Tex. May 24, 2022), ECF No. 34; *Burgess* v. *FDIC*, No. 22-cv-100, 2022 WL 17173893 (N.D. Tex. Nov. 6, 2022), appeal docketed Dec. 5, 2022 (5th Cir. No. 22-11172).

As to three of the four preliminary injunction factors, the analysis is straight-forward. On the merits (and with one exception that is ultimately immaterial at this stage), the government makes no serious effort to refute the multiple fatal constitutional defects Plaintiffs demonstrated in the agency's home-court trial; any *one* of those flaws suffices to support injunctive relief here. Nor does the government make *any* argument that enjoining FERC's proceeding—part of an investigation that FERC let linger for more than a decade and which involves no allegation of ongoing misconduct—would harm either the Commission or the public interest. After all, the Commission may pursue its allegations against Plaintiffs in an appropriate federal district court, just not in-house, before a FERC administrative law judge ("ALJ").

Instead, the government stakes its defense on three points: (1) that Plaintiffs' claims are not ripe (despite on-point precedent from the en banc Fifth Circuit holding otherwise); (2) that Plaintiffs will not suffer irreparable harm (despite the impending

injury of being tried in an unconstitutional forum by an unconstitutional deci-
sionmaker, an injury the Fifth Circuit and Supreme Court recognize as irreparable);
and (3) that this Court lacks jurisdiction under the Natural Gas Act's judicial review
provision (again contrary to en banc Fifth Circuit precedent).  Opp. 10-26.  The first
and third arguments all but ignore on-point Circuit precedent, relegating those bind-
ing cases to afterthoughts and passing footnotes.  The second simply misperceives the
nature of Plaintiffs' claimed injury.

The government plainly does not agree with *Jarkesy* v. *SEC*, 34 F.4th 446,
reh'g denied, 51 F.4th 644 (5th Cir. 2022), or *Cochran* v. *SEC*, 20 F.4th 194 (5th Cir.
2021) (en banc), cert. granted, 142 S. Ct. 2707 (2022).  In practical effect, the govern-
ment's brief asks the Court to operate in a pre-*Cochran*, pre-*Jarkesy* world.  More
specifically, the government all but ignores *Jarkesy*'s dispositive constitutional hold-
ings and seeks to confine *Cochran* to its facts.  But those decisions dictate the outcome
here.  As other district courts have done, this Court should prevent a federal agency
from pressing forward with an in-house trial that violates structural constitutional
guarantees.

Perhaps recognizing the flimsiness of its other arguments, the government
tries to shuffle the deck.  Focusing on just one of Plaintiffs' four constitutional claims,
the government reveals—to the Court, Plaintiffs, and the world—that during the 90-
day abeyance that the agency put in place nominally to facilitate briefing and decision
in this Court, FERC's Commissioners undertook a clandestine vote purporting to rat-
ify the appointment of its ALJs—officers that FERC has long insisted were

2

constitutionally appointed.  Putting aside this troubling departure from normal procedures—FERC usually acts in the daylight, with Commissioners voting publicly on orders that are then released to the public—the government does not reveal what FERC's ratification order actually said, how the Commissioners voted, whether there were any dissents (and, if so, on what grounds), or whether an order even exists. Certainly the agency's threadbare affidavit describing an email "vote" raises more questions than it answers, and neither provides fair notice to parties like Plaintiffs facing trial by these ALJs, nor allows meaningful review by this Court.  Worse still, FERC's cloak-and-dagger action lacks a statutory basis and, as a matter of law, cannot cure the constitutional defect.  Regardless, this Court need not resolve that issue now—because Plaintiffs have asserted three *other* constitutional claims, any *one* of which is enough to support preliminary injunctive relief.

The government's fallback suggestion that the Court stay the "proceedings" until the Supreme Court has decided *Cochran* (and its companion case *Axon*) later this year is groundless and should be readily rejected.  By "proceedings," the government apparently means that this Court should stay only this federal-court action—while leaving the agency free to charge forward unilaterally with its unconstitutional in-house bench trial, at a time and manner of the agency's choosing, likely depriving Plaintiffs of an opportunity for meaningful judicial relief from their irreparable, here-and-now constitutional injuries.  The government suggests that no injunction is needed because the agency issued a 90-day abeyance of its in-house trial.  The government ignores, of course, that FERC's abeyance is set to expire shortly by its terms,

and that the Presiding ALJ issued an order indicating an intent to press forward when that occurs next month. Moreover, even assuming otherwise, FERC would (under its proposed arrangement) remain free to kick off the trial whenever it chooses. At least one other district court in this Circuit rejected this "heads we win, tails you lose" gambit. So should this Court.

To be clear, Plaintiffs agree that the Supreme Court's forthcoming decisions in *Cochran* and *Axon* may affect some of the issues here. And if the government ultimately seeks certiorari in *Jarkesy*, and if the Supreme Court grants review, the same might be true for that case—though even then, a Supreme Court merits decision in *Jarkesy* is unlikely to issue until 2024. Plaintiffs would not oppose suspending further merits briefing in this Court pending the outcome of *Cochran* and *Axon*, and potentially also *Jarkesy*—but only if this Court first enjoins FERC from pressing forward in the meantime with an unconstitutional in-house trial.

## ARGUMENT IN REPLY

The government's brief (ECF No. 37, "Opposition" or "Opp.") is notable in large part for what it does not say. Under the four-factor framework governing issuance of a preliminary injunction, the government does not seriously contest that Plaintiffs have identified at least one meritorious constitutional defect in FERC's impending agency trial. Nor does the government make any argument *at all* that an injunction would harm the Commission itself or the public interest. Instead, the government argues Plaintiffs' claims are not ripe, that they have not shown irreparable harm, and that this Court lacks statutory jurisdiction. Each of those objections is readily

4

dispatched, clearing the way for this Court to enter a preliminary injunction. Plaintiffs therefore begin with those three issues.

## I. EACH OF THE GOVERNMENT'S THRESHOLD ARGUMENTS FAILS.

### A. This Case Is Ripe Under *Cochran*.

The government's tooth-and-nail resistance to *Cochran* starts with its ripeness argument. As Plaintiffs explained, this case is on all fours with *Cochran* vis-à-vis ripeness, and that case's ripeness analysis controls here. See Mot. 21-22. In language that precisely anticipates the facts and procedural posture now present here, the en banc court in *Cochran* explained that the plaintiff's claims there were ripe because the challenged agency proceeding had been set for a hearing before an ALJ. 20 F.4th at 213. So too here. In resisting this ineluctable conclusion, the government relies overwhelmingly on pre-*Cochran* cases, specifically *Energy Transfer Partners, L.P.* v. *FERC*, 567 F.3d 134 (5th Cir. 2009) ("*ETP*"), and *Total Gas & Power North America, Inc.* v. *FERC*, 859 F.3d 325 (5th Cir. 2017) ("*Total I*"). But *Cochran* explicitly addressed and distinguished those cases, on grounds squarely applicable here.

The standards for ripeness are clear. "The ripeness inquiry hinges on two factors: (1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration." *Cochran*, 20 F.4th at 212 (internal quotation marks omitted). Notwithstanding the government's efforts to confuse the matter, see Opp. 10, this same two-factor test applies regardless of whether the case involves the SEC, FERC, or some other agency. See *Gulfport Energy Corp.* v. *FERC*, 41 F.4th 667, 679 & n.25 (5th Cir. 2022) (citing *Cochran*, 20 F.4th at 212); *Midship Pipeline Co.* v. *FERC*, 45 F.4th 867, 872 (5th Cir. 2022) (same). Here, both factors support ripeness.

As to the first factor, "issues are fit for judicial decision if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Cochran*, 20 F.4th at 212 (internal quotation marks omitted). Here—just as in *Cochran*—there is "no dispute" that Plaintiffs' claims regarding the structural unconstitutionality of FERC's proceeding are "pure issue[s] of law," rendering them "fit for judicial decision without any additional fact-finding." *Ibid.* And here—again, as in *Cochran*—the hardship factor supports ripeness because "withholding judicial consideration would injure [Plaintiffs] by forcing [them] to litigate" in a proceeding that suffers from multiple structural constitutional infirmities. *Id.* at 212-213. Those infirmities include, but are not limited to, the fact that the presiding "ALJ * * * is unconstitutionally insulated from presidential control." *Ibid.*

Unable to seriously dispute that *Cochran* resolves the ripeness question, the government clings to *ETP* and *Total I*, advancing a maximalist interpretation of those decisions and insisting that they "control." Opp. 10-13.[1] The problem for the government is that the en banc court in *Cochran* explicitly clarified the scope of both *ETP* and *Total I*, and the grounds on which it distinguished those cases are squarely applicable here. As the court explained, *ETP* involved challenges to "particular FERC orders," which were deemed "not sufficiently 'final.'" 20 F.4th at 213. That "finality"

---

[1] In a footnote, the government cites a few other cases for the broad proposition that the Fifth Circuit is "hesitan[t]" to "inject itself into FERC * * * proceedings." Opp. 11 n.4. But those cases bear no legal or factual resemblance to this one, and the government does not contend otherwise. In any case, the Fifth Circuit has consistently rejected aggressive ripeness arguments in FERC cases, particularly post-*Cochran*. Cf. *Gulfport*, 41 F.4th at 679-80; *Midship*, 45 F.4th at 872-73.

concern, however, is "not relevant to the issue of ripeness" where plaintiffs do "not seek review of any particular [agency] order," but rather seek "a declaration" that the proceeding is structurally unconstitutional "and an injunction barring the [agency] from continuing its administrative proceedings." *Ibid.* That rationale applies just as much to Plaintiffs' claims as it did to Ms. Cochran's.

As for *Total I*, the en banc court in *Cochran* clarified that the panel decision in *Total I* hinged on the fact that "FERC had not actually scheduled a hearing before an ALJ prior to the plaintiffs filing suit," which rendered the fear of "being subjected to a constitutionally defective proceeding * * * too speculative" to show hardship. *Cochran*, 20 F.4th at 213. The *Cochran* court held that because "the SEC ha[d] already assigned Cochran's case to an ALJ, her risk of hardship [was] substantially more concrete" than in *Total I*, which was sufficient to establish ripeness. *Ibid.* The same is true here because the facts have changed materially since *Total I*. FERC has not only scheduled a hearing, but that hearing is imminent—indeed, it would already have begun had Plaintiffs not filed for a preliminary injunction, prompting FERC to grudgingly enter a temporary abeyance to allow for briefing and decision on the instant motion. Cf. Opp. 8. The injury to Plaintiffs is not hypothetical: They have already been compelled to defend themselves, and litigate numerous prehearing matters, before an agency and ALJ that cannot constitutionally adjudicate them. Those here-and-now constitutional wrongs cause real-world harms. Plaintiffs, for example,

have been subjected to burdensome discovery orders by the ALJ.[2]  In other words, Plaintiffs have *already* suffered concrete hardships at the hands of an unconstitutional adjudicator—*on top of* the further hardships that are imminently impending.

The government has no credible response.  Indeed, while it correctly observes that *Cochran* "found *ETP* and *Total [I]* materially distinguishable," it is conspicuously silent about the *grounds* on which *Cochran* found those cases distinguishable—and it ignores that the facts of this proceeding have changed in material ways since *Total I.* Opp. 13 (internal quotation marks omitted).  As Plaintiffs have shown, the same distinctions that led the en banc Fifth Circuit to conclude Ms. Cochran's claims were ripe are also present here, and the government does not attempt to show otherwise.

*Cochran* also forecloses the government's contention that Plaintiffs' injury "crystalizes only when FERC" renders a decision adverse to them and that they may never be harmed because "such a final order may never arrive."  Opp. 12.  As *Cochran* recognized, that reasoning is backwards and misunderstands Plaintiffs' injury.  Like Ms. Cochran, "withholding judicial consideration would injure [Plaintiffs]" today "by forcing [them] to litigate before" a constitutionally impermissible adjudicator. *Cochran*, 20 F.4th at 212.  That injury is not contingent on how FERC might someday resolve the merits of its in-house adjudication.  Indeed, the government's ripeness

---

[2] See, *e.g.*, Order Granting in Part Enforcement Staff's Second Motion to Compel, *Total Gas & Power N. Am., Inc., et al.*, FERC Docket No. IN12-17-000 (May 27, 2022) (directing Plaintiffs to re-review and re-produce materials that had already been produced to FERC Enforcement Staff, and directing them to search those materials on Enforcement Staff's behalf to identify materials responsive to specific data requests), https://tinyurl.com/mch8xean.

theory is not only inconsistent with *Cochran*'s discussion of ripeness; it would also effectively eviscerate *Cochran*'s statutory-jurisdiction holding.  In the government's view, challenges to ongoing unconstitutional agency proceedings are "not ripe" "[b]ecause * * * a final order may never arrive."  Opp. 12.  But the *central point* of *Cochran*'s statutory-jurisdiction analysis was that claims like Ms. Cochran's (and Plaintiffs') can proceed in district court precisely *because* "the enforcement proceedings will not necessarily result in a final adverse order," threatening to foreclose all meaningful judicial review of the underlying structural constitutional claims.  20 F.4th at 209.  If the government's ripeness theory were correct, cases falling within *Cochran*'s scope would never be ripe—a "Catch-22" in which every *Cochran*-style lawsuit "dies aborning."  *Knick* v. *Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019).

The government is left insisting that "*Cochran* does not purport to limit *ETP* or *Total [I]*" and that "[t]he Court is bound to * * * apply" those cases "to analogous facts."  Opp. 13.  But this Court is *also* bound to apply the en banc *Cochran* decision to analogous facts.  And the facts of this case are far closer to *Cochran* than to *ETP* or *Total I*—indeed, they are materially indistinguishable from *Cochran*—*for precisely the reasons* Cochran *identified*.  Finally, insofar as the government means to suggest that there is tension between *Cochran* and those earlier panel decisions, black-letter law dictates how that tension must be resolved:  When there is "any conflict between" a panel decision of the Fifth Circuit and an en banc decision of the Fifth Circuit (particularly a *subsequent* en banc decision), "the latter controls."  *Racal Survey U.S.A.,*

*Inc.* v. *M/V COUNT FLEET*, 231 F.3d 183, 190 n.7 (5th Cir. 2000); accord *Smith* v. *Reg'l Transit Auth.*, 756 F.3d 340, 344 n.4 (5th Cir. 2014).

Doubtless aware that it cannot credibly distinguish *Cochran*, the government falls back to an argument that *Cochran*'s ripeness holding would only apply to Plaintiffs' "ALJ-related Article II claims." Opp. 14. But the government offers no rationale for this surprising assertion. (Instead, it confusingly pivots to misguided attacks on the merits of Plaintiffs' Article II claims—arguments addressed in Section II below.)

Nothing in *Cochran*'s ripeness analysis is any less applicable to Plaintiffs' other constitutional claims. Those claims, too, raise "pure issue[s] of law" and are thus "fit for judicial decision without any additional fact-finding." *Cochran*, 20 F.4th at 212. The government tellingly does not contest that point. Moreover, no less than the Article II challenge to restrictions on removing SEC ALJs in *Cochran*, Plaintiffs' Article III, Seventh Amendment, and Article I nondelegation arguments likewise present structural challenges to the agency's authority to adjudicate its allegations in-house at all. And withholding judicial consideration of those claims would equally subject Plaintiffs to hardship, including the irreparable harm of "forcing [them] to litigate before" a structurally unconstitutional tribunal that lacks the constitutional authority to adjudicate actions of this sort. *Ibid.* *Cochran*'s hardship analysis certainly did not depend on anything peculiar to Article II claims. Indeed, *Cochran*'s lead citation for its hardship analysis was *Stolt-Nielsen S.A.* v. *AnimalFeeds International Corp.*, 559 U.S. 662, 670 n.2 (2010), which was not even a constitutional case, but found hardship for ripeness purposes where the plaintiffs would be subjected to

an "ultra vires" arbitration proceeding.  Finally, the grounds on which *Cochran* distinguished *ETP* and *Total I* are just as applicable to Plaintiffs' Article I, Article III, and Seventh Amendment claims as to the Article II claims.  See *Cochran*, 20 F.4th at 213.  *Cochran* thus controls the ripeness analysis in this case—as to *all* of Plaintiffs' constitutional claims.

As a last resort, the government half-heartedly argues that FERC's order placing the administrative proceeding in temporary abeyance renders Plaintiffs' claims unripe.  This argument is hard to take seriously.  FERC placed the proceeding in abeyance for 90 days (i.e., until March 21, 2023) "'to allow for briefing and a decision' on this motion."  Opp. 8 (quoting Stipulated Schedule for Briefing, ECF No. 27-1 at 2).  The abeyance order contemplates an agency hearing as early as April 24, 2023.  *Ibid.*  At the outset, it makes no sense that an agency could defeat a preliminary-injunction motion by unilaterally placing the challenged agency proceeding in a *temporary* abeyance while the court considers *that very motion*.  But in any event, FERC "has already assigned [Plaintiffs'] case to an ALJ," *Cochran*, 20 F.4th at 213; the hearing date remains in the agency's unilateral control; and the ALJ appears poised to press forward as soon as the abeyance ends.  See Status Order, ECF No. 27-2.  That puts Plaintiffs at "substantially more concrete" risk of hardship than in *Total I*, and places this case squarely within the ripeness holding of *Cochran*.  *Cochran*, 20 F.4th at 213.  And the government offers no basis to doubt that FERC will allow its 90-day abeyance to expire on the specified date if this Court does not grant relief now.  A mere "theoretical[]" possibility that prospective hardship will not materialize cannot

defeat ripeness; the question is whether the hardship is "sufficiently likely" to "justify judicial intervention." *United States* v. *Harris*, 960 F.3d 689, 695-696 (5th Cir. 2020) (citation omitted); accord *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158, 165, 167-168 (2014) ("substantial risk" of future harm satisfies constitutional and prudential ripeness requirements).  That standard is clearly met here.[3]

### B.    Plaintiffs Will Suffer Irreparable Harm Absent Relief.

As Plaintiffs have explained, the ongoing structurally unconstitutional proceeding against them is already causing, and will continue to cause, irreparable harm absent relief.  "[T]he loss of constitutional freedoms 'for even minimal periods of time * * * unquestionably constitutes irreparable injury.'"  *BST Holdings, LLC* v. *OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (quoting *Elrod* v. *Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).  The Constitution's "structural principles," no less than the Bill of Rights, "protect the individual," *Bond* v. *United States*, 564 U.S. 211, 222 (2011), and subjecting Plaintiffs to a structurally unconstitutional adjudication inflicts "a 'here-and-now' injury," *Free Enter. Fund* v. *Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 513 (2010) (quoting *Bowsher* v. *Synar*, 478 U.S. 714, 727 n.5 (1986)).  That injury can be "remedied by [this] court" prospectively, *ibid.*, but it cannot be undone or remedied after-the-fact.  Thus, "[i]rreparable harm occurs almost by

---

[3] The government briefly questions whether Plaintiffs have a "valid cause of action." Opp. 13 n.6.  They do.  As to the claims at issue here, Plaintiffs invoke the long-recognized cause of action "to sue to enjoin unconstitutional actions by state and federal officers," explained in *Armstrong* v. *Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015); see Compl. ¶ 10 (citing *Armstrong*); Mot. 23 (same); see also *Free Enter. Fund* v. *Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

definition when a person or entity demonstrates a likelihood that it is being regulated on an ongoing basis by an unconstitutionally structured agency." *John Doe Co.* v. *CFPB*, 849 F.3d 1129, 1136 (D.C. Cir. 2017) (Kavanaugh, J., dissenting). Such irreparable constitutional harm has *already* been inflicted on Plaintiffs, and will continue to accrue absent relief.

The government does not directly contest any of the case law establishing Plaintiffs' irreparable constitutional injuries. Instead, it tries to change the subject. Its "foremost" argument accuses Plaintiffs of waiting too long to seek a remedy. Opp. 15-16. Specifically, the government invokes the principle that a "substantial * * * delay" can, "[a]bsent a good explanation," indicate that a party's claims lack "urgency." *Symetra Life Ins. Co.* v. *Rapid Settlements Ltd.*, 612 F. Supp. 2d 759, 774 (S.D. Tex. 2007) (citation omitted). This argument is in self-evident "tension with [the government's] primary contention that [Plaintiffs'] claims are unripe," *Opulent Life Church* v. *City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012)—in other words, that Plaintiffs have somehow filed suit both too early and too late.

The government's internal inconsistency aside, Plaintiffs plainly have not sat on their rights. Instead, Plaintiffs have vigorously pressed their constitutional objections *for years*. But they have been stymied to date by the government's arguments that Plaintiffs' claims were unripe and they needed to wait for the agency proceedings

13

to advance, before seeking relief.  See *Total I*, 859 F.3d at 331, 339.[4]  Particularly in light of that backdrop, the government cannot be heard to argue that Plaintiffs erred by "wait[ing] until shortly before the ALJ hearing was to start" to file the instant suit. Opp. 16.  Among other things, if Plaintiffs had *not* waited until the hearing was near, the government assuredly would have wielded *that timing* against them, arguing that their claims were unripe precisely on that basis.  Indeed, the government is *still* making that argument now, asserting that even FERC's 90-day unilateral abeyance order kicks the hearing too far into the future.  See Opp. 14.

The government's next strategy is to simply misconstrue the nature of Plaintiffs' harm allegations.  The government reprises its assertion, discussed above, that Plaintiffs will not suffer the injury of having their rights and obligations *determined* by an unconstitutional adjudicator until there is a final order.  Opp. 16-17.  And it claims that the "only" harm Plaintiffs will suffer *prior* to a final order is "the expense and annoyance of litigation"—which it contends is insufficient under *FTC* v. *Standard Oil Company of California*, 449 U.S. 232, 244 (1980).  Opp. 17.  But this account of Plaintiffs' threatened harms is fatally incomplete: It omits the constitutional harm of being subjected to a structurally unconstitutional process in the first place, which

---

[4] In addition to Plaintiffs' long-running efforts to secure relief in federal court, they also raised constitutional arguments before FERC in their 2016 answer to the order to show cause.  See Compl. ¶ 100; App. 151-350; *accord Total I*, 859 F.3d at 331 (describing history).  FERC ruled on those issues only years later, in 2021.  See App. 424-550.  Plaintiffs subsequently renewed their arguments, and raised additional ones, in light of the intervening authority of *Jarkesy*—in a motion to dismiss filed less than a month after *Jarkesy*.  See App. 551-71.  FERC has refused to act on that renewed motion to dismiss.  The notion that Plaintiffs' conduct—in court or before the agency—indicates a lack of "urgency," Opp. 16 (citation omitted), is not credible.

can only be meaningfully remedied by injunctive relief before the proceeding concludes.  Accord *Cochran*, 40 F.4th at 212-213.  Plaintiffs described and relied on *this* injury throughout their Motion and Complaint.  See, *e.g.*, Mot. 25, 26 (noting irreparable injury of being "haled before" a structurally unconstitutional tribunal and "forced to stand trial" before it); Compl. ¶¶ 37, 120, 219 (similar).

To be sure, a final adjudication would inflict further constitutional and financial injuries.  And it is true that Plaintiffs are incurring significant litigation expenses that are realistically unrecoverable.  *Cf. Nat'l Fed'n of Indep. Bus.* v. *Dep't of Lab.*, 142 S. Ct. 661, 668 (2022) (per curiam) (noting that challenged agency action would inflict "unrecoverable compliance costs," and granting stay).  But even putting aside those costs, being "forc[ed] to litigate" before a structurally unconstitutional tribunal is *itself* a constitutional injury—one that is wholly distinct from litigation expenses, that is being inflicted *now*, and that will continue to accrue before a final decision (if any) is issued.  *Cochran*, 20 F.4th at 212-213.  That is a "here-and-now" constitutional injury, *Seila Law LLC* v. *CFPB*, 140 S. Ct. 2183, 2196 (2020), which cannot be redressed by after-the-fact vacatur of a final adverse decision—if any such decision comes. Cf. *Janvey* v. *Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages.").

The government's purported doubts about whether an injunction would alleviate Plaintiffs' injuries stem from the same mistaken understanding of the nature of those injuries.  The government theorizes that FERC could subject Plaintiffs to

expensive investigatory proceedings even if it cannot adjudicate its own allegations in-house.  See Opp. 17-18.  The government's speculation that the agency might inflict other, hypothetical burdens on Plaintiffs in the future is hardly a reason to allow FERC to subject Plaintiffs to here-and-now constitutional injuries today.

The government's last argument—that Plaintiffs' constitutional harms are not irreparable because after-the-fact judicial review of a final adverse order would provide an adequate remedy, Opp. 18—is based on the same error and is wrong for the reasons Plaintiffs have already explained.  See Mot. 26.  To be sure, constitutional claims, including structural ones, *can* be raised in an after-the-fact posture, see *Jarkesy*, 34 F.4th at 449-450, and after-the-fact review can remedy at least some of the harms inflicted by the adverse decision itself (*e.g.*, the imposition of civil penalties).  But that relief comes too late to remedy the harm of "forcing [a plaintiff] to litigate" before a structurally "unconstitutional[]" tribunal.  *Cochran*, 20 F.4th at 212-213.  And it may never come at all—if, for example, Plaintiffs prevail on the underlying merits before the Commission, and the Commission accordingly never issues a "final adverse order" subject to appellate review.  *Id.* at 209.  For those reasons, *Cochran* recognized that after-the-fact review "does not provide an adequate possibility of meaningful judicial review" for parties who are "challenging the constitutional authority of [their] adjudicator."  *Ibid.*  That analysis is precisely applicable here.

The government's only response to the inconsistency between their stance and *Cochran* is to highlight the en banc court's disclaimer that it was not addressing Ms. Cochran's entitlement to preliminary injunctive relief.  Opp. 17 n.7 (citing *Cochran*,

20 F.4th at 210 n.14).  But that merely reflects the familiar principle that courts do not address issues that are not before them.[5]  The fact remains that *Cochran*'s reasoning establishes that constitutional injuries such as Plaintiffs'—*i.e.*, being subjected to a structurally unconstitutional proceeding—are irreparable, justifying injunctive relief prior to a final decision.  Indeed, a three-judge Fifth Circuit motions panel enjoined the administrative proceedings in *Cochran* pending appeal.  See Order, *Cochran* v. *SEC*, No. 19-10396 (5th Cir. Sept. 24, 2019), ECF No. 77-2; *Cochran*, 20 F.4th at 198.  In so doing, the panel necessarily rejected the SEC's opposing arguments on irreparable harm, which were materially identical to the government's contentions here.  See Opp'n to Pl.-Appellant's Mot. for Inj. Pending Appeal at 12-14, *Cochran* v. *SEC*, No. 19-10396 (5th Cir. Aug. 26, 2019), ECF No. 64; cf. *Vidal* v. *Gonzales*, 491 F.3d 250, 254 n.17 (5th Cir. 2007) (party "must show * * * irreparable harm" for injunction pending appeal (citation omitted)).

It is therefore unsurprising that, despite the government's half-hearted effort to downplay *Cochran*, it ultimately falls back on thinly disguised hostility toward that decision.  Citing out-of-circuit caselaw that disagreed with *Cochran*'s jurisdictional approach, the government voices policy concerns about the supposed negative effects of allowing "piecemeal litigation [of] * * * structural constitutional claim[s]."  Opp. 18-

---

[5] As for the government's fleeting reference (Opp. 17 n.7) to the denial of "broad injunctive relief against [PCAOB]'s continued operations" in *Free Enterprise Fund*, 561 U.S. at 513, that is a red herring.  That holding stemmed from infirmities in the petitioners' merits arguments.  *Id.* at 508-13.  The Court did, however, hold that the petitioners *were* entitled to declaratory relief on their meritorious removability claim, noting that "a separation-of-powers violation may create a 'here-and-now' injury that can be remedied by a court."  *Id.* at 513 (quoting *Bowsher*, 478 U.S. at 727 n.5).

19 (citing D.C. Circuit cases).  Those policy concerns are mistaken and overwrought.[6] Moreover, they are misdirected.  *Cochran* is both correct and controlling in this Circuit, as are the other Supreme Court and Fifth Circuit cases cited above.  Under those cases, Plaintiffs have shown irreparable harm.

### C.  This Court Has Subject-Matter Jurisdiction.

The Fifth Circuit's en banc decision in *Cochran* forecloses the government's core contention that the statute governing judicial review of FERC orders, 15 U.S.C. § 717r(b), implicitly strips this Court of jurisdiction under 28 U.S.C. § 1331 to adjudicate Plaintiffs' constitutional claims.  The government clearly believes that *Cochran* was wrongly decided.  But it does not dispute that *Cochran* is binding in this Circuit, and the government's terse attempts to distinguish it fail.

In *Cochran*, the Fifth Circuit determined whether the Exchange Act evinced an intent to strip district-court jurisdiction over a removal-power claim by applying the two-part test prescribed in *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200 (1994).  The first part of that test asks whether the "statutory scheme displays a fairly discernable intent to limit jurisdiction."  *Cochran*, 20 F.4th at 206 (internal quotation marks and brackets omitted).  The second part asks—through the application of three sub-factors—whether "the claims at issue are of the type Congress intended to be

---

[6] Notably, the government is mistaken to raise the specter of "criminal defendants" bringing a flood of "interlocutory" district court suits.  Opp. 19.  Federal criminal defendants are *already* in an Article III court, where they can raise constitutional claims.  And federal-court interference with state criminal cases is guarded by *Younger* abstention, see *Gates* v. *Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (summarizing doctrine), a rule grounded in federalism principles that are not implicated here.

reviewed within the statutory structure." *Ibid.* (internal quotation marks and brackets omitted). *Cochran* assumed that the first part of the *Thunder Basin* test was satisfied, "advance[d] to step two" of that test, and then concluded that the removal-power claim was *not* one that Congress intended to route to the courts of appeals. *Id.* at 206-207; see Mot. 24. This Court should apply the same methodology and reach the same conclusion.[7]

The first *Thunder Basin* factor asks whether the claims at issue in the district-court proceeding are "wholly collateral" to those pending before the agency. See *Thunder Basin*, 510 U.S. at 212. The government insists that Plaintiffs' removal-power claims are "not wholly collateral to the administrative proceeding[]" and cites the D.C. Circuit's decision in *Jarkesy* v. *SEC*, 803 F.3d 9 (2015), for support. Opp. 24. But *Cochran* held unequivocally that a "removal power claim *is* wholly collateral" to the agency proceeding and expressly noted the Fifth Circuit's "disagree[ment]" with *Jarkesy* on this precise question. *Cochran*, 20 F.4th at 207, 203 n.10 (emphasis added). The government's argument starkly conflicts with Circuit precedent.

---

[7] This Court can ignore the government's arguments concerning the first set of factors under *Thunder Basin* (Opp. 21-23) and rely exclusively on FERC's inability to satisfy the second part of the *Thunder Basin* test, as in *Cochran*. It bears mention, however, that the government's discussion of the first part of the *Thunder Basin* test misconstrues the relevant inquiry. The government argues that "[d]istrict courts * * * do not have a clear role" in FERC's investigation and enforcement processes (*id.* at 21) and that Natural Gas Act civil-penalty proceedings cannot be conducted in district court (*id.* at 22-23). None of that is relevant, because Plaintiffs are pursuing here *structural* constitutional challenges that are entirely collateral to the merits of FERC's adjudication. Claims of that type *can* be pursued in district court. See *Cochran*, 20 F.4th at 199; *Free Enter. Fund*, 561 U.S. at 489-90.

The second *Thunder Basin* factor asks whether the claims at issue are within the agency's expertise.  See *Thunder Basin*, 510 U.S. at 214-215.  The government argues that FERC has "deep familiarity" with "market manipulation."  Opp. 24.  But the operative question under *Thunder Basin* is whether a plaintiff's claims *in the district-court proceeding* implicate agency expertise, not whether the underlying claims *in the agency proceeding* do so.  And, as *Cochran* explained, structural constitutional claims of the kind at issue here are plainly "outside the [agency's] expertise." 20 F.4th at 208; see *id.* at 207 (explaining the "nature of [a] challenge is structural" when the claim "does not depend on the validity of any substantive aspect" of the proceeding and when the outcome of the constitutional challenge "will have no bearing on [the plaintiff's] ultimate liability"); *Carr* v. *Saul*, 141 S. Ct. 1352, 1360 (2021).

The third *Thunder Basin* factor asks whether the plaintiff would be deprived of the opportunity for meaningful judicial review.  See *Thunder Basin*, 510 U.S. at 215.  The government argues that the Natural Gas Act authorizes review of FERC orders in the courts of appeals, and so a court will "eventually" be able to adjudicate the constitutional claims in the future.  Opp. 23.  This is, to a tee, the exact argument rejected in *Cochran*.  *Cochran* explained that, because the "enforcement proceedings [would] not necessarily result in a final adverse order," Ms. Cochran might "be left unable to seek redress" for her constitutional claims if the agency ruled in her favor, meaning that a collateral district-court proceeding was the only way to guarantee judicial review.  20 F.4th at 209.  The same is true here.

Despite the en banc court's dispositive holding in *Cochran*, the government begins its jurisdictional argument with other, non-binding decisions. The chief inputs to the government's jurisdictional argument are (1) decisions from the Third and D.C. Circuits that the Fifth Circuit rejected in *Cochran* and (2) Judge Atlas's unpublished district-court decision in *Total I*, which involved different facts, predates and is irreconcilable with *Cochran*, and in fact closely tracks the *dissent* in that case. See Opp. 20-24.

When the government finally does address *Cochran*, it has little to say. The government's principal contention is that *Cochran* is somehow distinguishable because that case concerned the SEC, and this case concerns FERC. See Opp. 25-26. That is "a distinction without a difference." *Catlin Syndicate Ltd.* v. *Imperial Palace of Miss., Inc.*, 600 F.3d 511, 514 (5th Cir. 2010). Courts in this Circuit are duty-bound to follow not only *Cochran*'s application of the law to the specific facts at issue there, but also the "integral part[s] of [its] legal reasoning." *Centennial Ins. Co.* v. *Ryder Truck Rental, Inc.*, 149 F.3d 378, 386 (5th Cir. 1998) (internal quotation marks omitted); see *United States* v. *Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006) (noting that the "*reasoning* of * * * precedents" is binding (emphasis added)). And, as explained in detail above, the "legal reasoning" behind *Cochran*'s rejection of the SEC's arguments applies with equal force in this case.

The government seizes on *Cochran*'s passing statement that the outcome "may be different" in "other cases, even those concerning similar statutory schemes and claims." Opp. 25 (quoting *Cochran*, 20 F.4th at 211) (emphasis omitted). But the

statute and claims at issue here are not just "similar" to the ones at issue in *Cochran*, they are materially identical.  Indeed, the statutory judicial-review schemes in the Exchange Act and the Natural Gas Act use strikingly similar language in channeling judicial review of final agency orders to the courts of appeals.  *Compare* 15 U.S.C. § 78y(a)(1), *with id.* § 717r(b).  And with respect to parity between "claims," the government does not—and could not—argue that the structural constitutional claims at issue here are any different than the structural constitutional claim in *Cochran*.

In an attempt to avoid *Cochran*, the government suggests that there are supposedly "significant features of the NGA that distinguish it from the Exchange Act." Opp. 25.  But their only example is that, "unlike with the Exchange Act," the Natural Gas Act purportedly requires the agency to adjudicate penalties in administrative proceedings.  *Ibid.*  That assertion is incorrect, as Plaintiffs have explained.  See Compl. ¶¶ 148-166.  But even if it were true, the government does not explain why that distinction has any legal significance—and under *Cochran*, it does not.

Nothing about *Cochran*'s holding turns on whether an agency can pursue enforcement proceedings in-house, or instead can choose to file them in federal court. *Cochran* held that the clear and expansive text of 28 U.S.C. § 1331 encompassed the claims at issue, and that nothing in the Exchange Act's provision allowing judicial review of final agency orders stripped district courts of that jurisdiction.  See *Cochran*, 20 F.4th at 200-201.  The same is true for FERC, because the statute authorizing judicial review of FERC orders is materially the same as the SEC's statute, in the respects that *Cochran* deemed relevant.  Put differently, the fact that some

SEC claims are not channeled through an administrative process because the agency files them initially in federal court just means that some SEC cases do not implicate *Thunder Basin* at all; the Exchange Act's judicial-review provision for final agency orders doesn't apply to that subset of cases, because the parties are in federal court from the outset. But whether all (or only a subset of) cases involving a particular agency are subject to administrative adjudication and back-end judicial review, the upshot is the same *for the kinds of claims at issue here*, under *Cochran*'s analysis of 28 U.S.C. § 1331.

## II.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

The government does not seriously dispute that the constitutional violations alleged by Plaintiffs exist, or that, if the Court did have jurisdiction, Plaintiffs would be likely to succeed on the merits of those claims. Indeed, the Opposition does not even include a freestanding section addressing the merits. What little the government does say about the merits is mostly parked in a footnote that previews its potential *future* arguments. See Opp. 9 n.3 (explaining that the government "*will* timely address" the supposed deficiencies in Plaintiffs' theories when "responding to the complaint or at summary judgment" (emphasis added)). Arguments raised only in footnotes—including most of the government's merits arguments here—are waived. See *Arbuckle Mountain Ranch of Tex., Inc.* v. *Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016). And even without waiver, the government's footnote is best read as a reservation of rights with respect to *future* merits arguments, not a contention that the specific motion *now* pending before the Court ought to be denied for any merits-based reason. Indeed, the government's halfhearted merits arguments are

particularly ineffective, because Plaintiffs only need to show a likelihood of success on *one* claim to support preliminary injunctive relief—whereas the government must run the table.

All of that said—and out of an abundance of caution—Plaintiffs will briefly explain below why the merits arguments teased in the Opposition are meritless.

With respect to Plaintiffs' Seventh Amendment and nondelegation arguments, the government ignores the Fifth Circuit's decision in *Jarkesy*, which clearly established both that (1) enforcement proceedings of the type at issue here violate the Seventh Amendment and (2) a statute which provides agencies with no guidance about where to pursue enforcement actions violates the non-delegation doctrine. See Mot. 9-12, 17-20. Tellingly, the government's footnote relies exclusively on pre-*Jarkesy* cases and raises arguments that are nearly identical to those advanced by the *dissent* in *Jarkesy*. See 34 F.4th at 466-479 (Davis, J., dissenting).

With respect to Plaintiffs' Appointments Clause challenge to FERC's ALJs, the government contends that whatever constitutional defect may previously have existed was "cured" when "FERC * * * properly ratified the appointment of the ALJs" in December 2022. Opp. 9 n.3, 14. A declaration attached to the government's Opposition discloses that, acting over the holidays and after the Plaintiffs had moved for a preliminary injunction, FERC conducted a secret email vote through which the Commission purported to "ratify" the appointment of the agency's twelve ALJs. See ECF No. 37-1 ("Bose Decl.") ¶ 2. At the outset, this process serves as an apt reminder of why federal courts should be open to hear cases of this type: Had Plaintiffs not

24

filed this lawsuit, FERC could have continued to insist in the agency proceedings that no Appointments Clause problem existed with its ALJs.  See App. 520 ¶ 193 (ECF No. 23-1 at 522) (FERC previously arguing that "its ALJs are validly appointed" in a manner "consistent with the Appointments Clause").  Evidently, only the prospect of judicial scrutiny of its unconstitutional proceedings prompted FERC to act.

FERC's thirteenth-hour half-measure, however, failed to "cure" the Appointments Clause defect.  The government's puzzling declaration raises more questions than it answers.  For example, the declaration states that the Commissioners "ratif[ed]" the ALJs' appointments (Bose Decl. ¶¶ 2-3), but leaves out multiple significant details.  Did the purported ratification apply prospectively or also attempt to cure past actions?  If the latter, which actions and on what legal theory?  Plaintiffs and the Court have no way of knowing what the Commissioners voted to do, because the declaration—despite mentioning an effort to "record this vote," *id*. ¶ 4—does not attach a FERC order or any other written memorialization of the vote.  Beyond stating that a "majority" of Commissioners voted in favor of whatever it is that was proposed by the then-Chairman's email, the declaration does not even disclose what the vote tally was, whether any Commissioners dissented, and, if so, what those dissenting Commissioners might have said.  This is simply no way to run a railroad.

Moreover, FERC's in-the-shadows vote could not have cured the Appointments Clause problem.  The default mode of appointment for inferior officers is appointment by the President with the advice and consent of the Senate; that default applies unless Congress enacts a statute allowing one of the permissible alternatives.  See *Lucia*

v. *SEC*, 138 S. Ct. 2044, 2051 n.3 (2018).  FERC's organic statute clearly states that FERC's "*Chairman*"—and not the full Commission—is "responsible * * * for * * * the appointment" of ALJs.  42 U.S.C. § 7171(c) (emphasis added).  Although a hypothetical statute authorizing the full Commission to vote to appoint ALJs might potentially comply with the Appointments Clause under *Lucia,* but cf. 42 U.S.C. § 7171(a) (defining FERC as a commission "within the Department [of Energy]," whose head is its Secretary), FERC identifies no statute that gives the Commission that authority.

And even if FERC's secret vote cured the *Appointments Clause* problem, it cannot cure the *removability* defect, which is a matter of federal statute.  As Plaintiffs have explained, FERC's ALJs enjoy at least two layers of protection from removal— an arrangement that is plainly unconstitutional under *Jarkesy*.  See Mot. 12-15; *Jarkesy*, 34 F.4th at 462.  The government's Opposition does not—and could not— argue that the dual for-cause protections for FERC's ALJs are constitutional.

Instead of engaging with the merits of Plaintiffs' claims, the government insists that the removability argument must fail because Plaintiffs have not shown "harm based on any removal protection"—a requirement they divine from *Community Financial Services Ass'n of America, Ltd.* v. *CFPB*, 51 F.4th 616 (5th Cir. 2022), petitions for cert. pending, No. 22-448 (filed Nov. 14, 2022), No. 22-663 (filed Jan. 13, 2023), and its discussion of *Collins* v. *Yellen*, 141 S. Ct. 1761 (2021).  See Opp. 9 n.3; see *id.* at 14.  But the government overreads *Community Financial*.

As an initial matter, the supposed requirement to plead a certain kind of "harm" (Opp. 14) relates solely to the question of *remedy*—not the *merits* of Plaintiffs'

constitutional claims.  The Fifth Circuit in *Community Financial* believed that requirement followed from *Collins*, which the government here also now invokes.  See 51 F.4th at 631-632; Opp. 14.  But the Supreme Court in *Collins* did not regard a showing of "harm" as a component of determining whether a removal restriction violates the Constitution.  Cf. Opp. 14.  To the contrary, *Collins* first held that the restrictions on removing the officer at issue (the Director of the Federal Housing Finance Agency) violated the Constitution.  See 141 S. Ct. at 1783-1787; *id.* at 1783 ("The Recovery Act's for-cause restriction on the President's removal authority violates the separation of powers."); *id.* at 1787 ("[T]he removal restriction in the Recovery Act violates the separation of powers.").  Only then did the Supreme Court go on to consider what "*relief*" would be appropriate.  See *id.* at 1787 ("Having found that the removal restriction violates the Constitution, we turn to the shareholders' request for relief."); *id.* at 1787-1789.  It was in the course of that discussion of "relief" that the Court considered whether the unconstitutional removal restrictions had caused the challengers "compensable harm," an issue the Court remanded without resolving. *Id.* at 1789.  The Fifth Circuit in *Community Financial* understood *Collins* in precisely that way.  See 51 F.4th at 631 (explaining that *Collins* had "agreed that the for-cause removal restriction was unconstitutional" and had discussed "harm" as relevant to whether plaintiff could "obtain a remedy").

Under these decisions, any dispute over whether and how Plaintiffs have been and are being harmed by the multiple layers of removal restrictions on the ALJ has no bearing on whether those restrictions violate the Constitution.  As *Jarkesy* makes

clear, they do.  34 F.4th at 463-465.  Instead, any dispute over how those unconstitutional restrictions have injured Plaintiffs, and which particular agency actions should be invalidated as a result, bears on the eventual remedy Plaintiffs may obtain at the conclusion of this suit if they prevail.  What matters for present purposes is that the government's "harm" argument casts no doubt on Plaintiffs' likelihood of success in showing that the removal restrictions are unconstitutional and poses no obstacle to the issuance of a preliminary injunction—to protect Plaintiffs from additional, ongoing constitutional harms caused by being subjected to an agency proceeding run by an officer unlawfully insulated from removal.

In any event, the government's argument about "harm"—like so much of its submission—runs headlong into *Cochran*.  The *Cochran* majority held that the requirement to show "harm" applies when a plaintiff "seek[s] to 'void' the acts of an[ agency] official," but *does not* apply when a plaintiff seeks to secure "an administrative adjudication untainted by separation-of-powers violations," as Plaintiffs do here.  20 F.4th at 210 n.16; accord *Consumers' Rsch.* v. *Consumer Prod. Safety Comm'n*, 592 F. Supp. 3d 568, 587 (E.D. Tex. 2022), appeal docketed May 18, 2022 (5th Cir. No. 22-40328).  The plaintiffs in *Community Financial* sought to void a prior agency action (the CFPB's Payday Lending Rule).  By contrast, Plaintiffs here do not seek invalidation of any agency action, but rather—like Ms. Cochran—are simply asking not to be subjected to a pending adjudication.  In short, *Cochran* rejected the argument the government presents in its Opposition.  See 20 F.4th at 210 n.16.  And because *Cochran* is an en banc case, this Court would be required to follow it even if

it perceived some conflict between *Cochran* and a later three-judge panel's discussion of remedies in *Community Financial*.

To secure a preliminary injunction, Plaintiffs need only establish that they are likely to succeed on the merits of *one* of their claims.  See *Nat'l Oilwell Varco, L.P.* v. *Garza*, No. CV H-22-2006, 2022 WL 3098238, at *1 & n.4 (S.D. Tex. Aug. 4, 2022). Here, Plaintiffs are likely to succeed on the merits of *all* of their claims, and the government effectively concedes the point as to the Seventh Amendment and non-delegation claims.  That reality, in combination with the irreparable harm Plaintiffs now face, supports issuing an injunction.

## III.  THIS COURT SHOULD REJECT THE GOVERNMENT'S SUGGESTION TO STAY THIS CASE BUT NOT THE UNDERLYING FERC PROCEEDING.

As explained above and in the Motion, this Court should issue a preliminary injunction.  In any event, the Court should reject the government's suggestion to stay only this federal-court case while allowing the underlying FERC proceeding to advance on FERC's unilateral say-so.

The government suggests that, if the Court does not deny the Motion, then "these proceedings should be stayed pending the Supreme Court's decision[s] in *Cochran* and *Axon*."  Opp. 26.  The next page of the Opposition clarifies that the government is only seeking to have this Court "stay[] *district court* proceedings."  *Id.* at 27 (emphasis added).  The government apparently means to suggest that the Court should stay this district-court litigation, but allow FERC to press forward with its agency bench trial, at a time and date of the agency's choosing, once the current temporary abeyance ends.

That suggestion has nothing to recommend it. FERC's abeyance of the underlying proceeding is explicitly *temporary*—it expires 90 days after it was issued (i.e., on March 21, 2023), and permits FERC to schedule a hearing any time after April 24, 2023. Opp. 8. Thus, if this Court were to stay the district-court case but not the FERC proceeding, the Commission would be free to resume its unconstitutional enforcement action in a matter of weeks. Plaintiffs, in turn, would have no meaningful recourse, because this lawsuit—whose entire purpose is to halt the FERC proceeding—would have been placed on hold. The answer to this "heads we win, tails you lose" proposal should be an easy "no."

The government has tried this move before, without success. In *Rover Pipeline, LLC* v. *FERC*, the plaintiffs filed a lawsuit in the Northern District of Texas seeking, much like here, a declaration that FERC's ALJs were unconstitutionally insulated from removal and that FERC's enforcement proceeding violated the Seventh Amendment. FERC proposed halting the district-court proceedings pending the Supreme Court's disposition of *Axon*, but allowing the underlying agency to continue apace. Defs.' Suppl. Br. Opposing Stay at 1, *Rover Pipeline, LLC* v. *FERC,* No. 3:22-cv-00232 (N.D. Tex. Apr. 5, 2022), ECF No. 28. Judge Scholer rejected that request, and instead stayed both the district-court case and the FERC proceeding. See *Rover*, ECF No. 34 at 1 (May 24, 2022).

Because Plaintiffs have satisfied each of the criteria for receiving a preliminary injunction, this Court should grant the Motion and enjoin the agency proceeding. If this Court does so, Plaintiffs would not oppose an abeyance of this federal-court

litigation pending the Supreme Court's disposition of *Axon* and *Cochran* (and potentially pending any further review the government may seek in *Jarkesy*). But granting the government's proposed one-sided stay would be inequitable to Plaintiffs and risk wasting the Court's time and resources. The government's proposed approach would leave Plaintiffs at the mercy of an agency that refused to heed Fifth Circuit precedent and pressed forward with an unconstitutional proceeding until Plaintiffs sought preliminary relief from this Court. And that approach invites the Commission to resume its unlawful proceeding as soon as its time-limited, unilateral abeyance expires—likely necessitating additional, emergency litigation in this Court. The Court can and should avoid that deeply unfair and disruptive scenario by entering the preliminary injunction and addressing remaining procedural issues in due course.

## CONCLUSION

The Court should grant a preliminary injunction.

Dated:  February 13, 2023

 /s/  *Patrick W. Mizell*
Patrick W. Mizell
   (Texas Bar No. 14233980)
   pmizell@velaw.com
VINSON & ELKINS LLP
845 Texas St., Suite 4700
Houston, TX 77002
Telephone:  (713) 758-2932
Facsimile:   (713) 615-5912

Jason J. Fleischer
   (D.C. Bar No. 978810)
   jfleischer@velaw.com
Matthew X. Etchemendy*
   (D.C. Bar No. 1500534)
   metchemendy@velaw.com
James T. Dawson*
   (D.C. Bar No. 1602502)
   jamesdawson@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, D.C. 20037
Telephone:  (202) 639-6500
Facsimile:   (202) 639-6604

Jeffrey M. Jakubiak
   (N.Y. Bar No. 2877827)
   jjakubiak@velaw.com
VINSON & ELKINS LLP
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
Telephone:  (212) 237-0082
Facsimile:   (212) 237-0100

* *Pro Hac Vice* Application Pending

Respectfully submitted,

 /s/  *William S. Scherman*
William S. Scherman
   (D.C. Bar No. 384860)
   *attorney-in-charge*
   wscherman@gibsondunn.com
Jonathan C. Bond
   (D.C. Bar No. 1003728)
   jbond@gibsondunn.com
Vladimir J. Semendyai
   (D.C. Bar No. 1044217)
   vsemendyai@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  (202) 955-8500
Facsimile:   (202) 467-0539

Collin J. Cox
   (Texas Bar No. 24031977)
   ccox@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002
Telephone:  (346) 718-6600
Facsimile:   (346) 718-6620

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of February, 2023, I caused the foregoing document to be filed with the Clerk of the U.S. District Court for the Southern District of Texas via the Court's CM/ECF system, which will send notification of such filing to all counsel and parties of record registered to receive such notices.

Dated:  February 13, 2023

Respectfully submitted,

 /s/  *Patrick W. Mizell*
Patrick W. Mizell
  (Texas Bar No. 14233980)
  pmizell@velaw.com
VINSON & ELKINS LLP
845 Texas St., Suite 4700
Houston, TX 77002
Telephone:  (713) 758-2932
Facsimile:   (713) 615-5912

*Attorney for Plaintiffs*

33